Patricia **WHITE**, on her behalf and on behalf of all others similarly situated, et al., Plaintiffs–Appellants,

v.

Jerome **GOODMAN**, et al., Defendants–Appellees.

Nos. 98–4180, 98–4328, 98–4329.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1999

Decided Jan. 11, 2000

Daniel A. Edelman (argued), Edelman, Combs, & Latturner, Chicago, IL, for Plaintiff–Appellant in No. 98-4180.

Cathleen M. Combs, Edelman, Combs & Latturner, Chicago, IL, for Plaintiffs–Appellants in Nos. 98-4328 and 98-4329.

Leonard O. Abrams, Abrams & Abrams, P.C., Chicago, IL, Manuel H. Newburger,

Barron & Newburger, P.C., Austin, TX, for Amicus Curiae Commercial Law League of America.

Stephen R. Swofford (argued), Hinshaw & Culbertson, Chicago, IL, for Defendants-Appellees.

Theodore R. Scarborough, Jr., Sidley & Austin, Chicago, IL, for Defendant–Appellee Book of the Month Club, Inc.

Before POSNER, Chief Judge, and MANION and ROVNER, Circuit Judges.

POSNER, Chief Judge.

One of the practices that the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, forbids is "flat-rating," the term popularly applied to providing a form which creates the false impression that someone (usually a collection agency) besides the actual creditor is "participating" in collecting the debt. § 1692j(a); see S.Rep.No. 95–382, 95th Cong. 1st Sess. 5 (1977), U.S. Code Cong. & Admin.News 1977 pp. 1695, 1699. (The provider of the form presumably charges a "flat rate" for the form; hence the popular name for the practice.) The element of deception lies less in the misrepresentation that a third-party debt collector is involved than in the signal, conveyed by turning over a debt for collection, that the creditor does not intend to drop the matter. Congress's concern was that such deception might induce debtors to abandon legitimate defenses. Whether the concern was well founded is not for us to say.

The flat-rater is thus not the creditor, but the counterpart of a contributory infringer in the law of intellectual property; he furnishes a deceptive instrumentality to the primary violator. Another provision of the Act, 15 U.S.C. § 1692a(6), brings the latter within the scope of liability by forbidding a creditor, in the collection of his debts, to use a name which suggests the involvement of a third party, unless the third party is participating in the debt collection, for then there is no deception. Conceivably this provision could be read so narrowly as to reach only the case in which the creditor is using a pseudonym; but this reading, as the cases interpreting section 1692a(6) make clear, *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2d Cir.1998); *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232 (5th Cir.1997), is too narrow. A separate provision forbids the use of a pseudonym by a debt collector, 15 U.S.C. § 1692e(14), and while a debt collector is not a creditor the section we have just cited indicates that the statute distinguishes between the use of pseudonyms, on the one hand, and a false representation that a third party (which may exist) is participating in debt collection, on the other.

For many years North Shore Agency, Inc., a debt-collection service, has had an arrangement with Book–of–the–Month Club that works as follows. (The arrangement has never been reduced to writing, but there is no material dispute over how it works.) When unsuccessful in obtaining payment from one of its customers, Book-of-the-Month Club sends the name and address of the customer to North Shore, which writes the customer demanding payment of the sum that Book-of–the–Month Club has informed North Shore is due, and stating that further collection efforts may ensue if the demand is ignored. "Be prepared for further collection activity," as the letter to one of the named plaintiffs put it. Before mailing the letter, North Shore runs a computer check on the customer's name in order to eliminate debtors whom it would be futile to dun. For example, if the computer check reveals that the debtor is in bankruptcy, North Shore will not bother to send him a letter, because a debt to a book club is ordinarily too small to warrant filing a claim in bankruptcy.

The contents of the dunning letter are a collaborative product of North Shore and Book-of-the–Month Club, and the letter directs the customer to pay the latter directly. The letter lists a phone number for North Shore but it is a number for messages only, and the messages are forwarded to Book–of–the–Month Club rather than being handled by North Shore. If the letter fails to elicit payment, Book–of–the–Month Club will so notify North

Shore, which may send another letter; and, if it does, this sequence may be repeated a number of times, until North Shore is convinced that the debtor is not going to pay in response merely to a demand. Book–of–the–Month Club pays North Shore a flat fee for each letter that North Shore mails.

If the letters fail to elicit payment of the debt, Book–of–the–Month Club retransmits the customer's name and address to North Shore and it is then up to North Shore to decide what additional efforts, if any, to make to collect the debt. Because the debts usually are very small, North Shore probably does nothing further in most cases, although the record is barren of data. If it does make further efforts and succeeds in obtaining money from the debtor, it keeps 35 percent of the "take" as its compensation and remits the balance to Book-of-the–Month Club.

Patricia White received such a letter, demanding the princely sum of $18.45, and responded not by paying or by questioning the validity of the debt, but by declaring bankruptcy and later by bringing a class action suit against North Shore, Book–of–the–Month Club, the company that stuffs and mails the envelopes that North Shore sends Book–of–the–Month Club's debtors, and a shareholder of North Shore (Mr. Goodman, the first defendant named in the complaint). A similar though more limited action was brought on behalf of two other debtors but against North Shore only. The two cases were consolidated and both were dismissed on motion for summary judgment.

█ So far as the joinder of defendants other than North Shore and Book–of–the–Month Club is concerned, the suits are frivolous and the plaintiffs, represented by an experienced practitioner in consumer finance litigation, should have been sanctioned for what amounts to malicious prosecution. The Fair Debt Collection Practices Act is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil, which was not attempted here, *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 979–80 (7th Cir.1998), or at companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters. *Laubach v. Arrow Service Bureau, Inc.*, 987 F.Supp. 625, 629–31 (N.D.Ill.1997); *Trull v. Lason Systems, Inc.*, 982 F.Supp. 600, 607–08 (N.D.Ill. 1997); S.Rep.No. 382, *supra*, at 5. The joinder of these defendants illustrates the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and is thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed.

█ The contention that North Shore is a flat-rater is not frivolous, and if it were a flat-rater, Book–of–the–Month Club might be liable under section 1692a(6). But it is unconvincing. North Shore did compose, either by itself or jointly with Book–of–the–Month Club, the dunning letter that Patricia White received; and if this were all North Shore had done to help the Club collect the money she owed it, North Shore would indeed be a flat-rater. But it is not all that North Shore did. Because the debts that it collects on behalf of Book–of–the–Month Club are small, North Shore's collection efforts are, we may assume, usually limited to sending a series of dunning letters. If the debtors are smart, they probably know that if they tough it out, eventually the letters will cease coming and that will be the last they hear of the matter until they discover they have earned a lousy credit rating. They are, nevertheless, in the clutches of a bona fide collection agency which, if the letters fail to collect the debt, may sue. Probably North Shore *does* sue from time to time on behalf of Book-of-the–Month Club just so that the club does not get a reputation as being a particularly easy mark for people who like to get their books free. The plaintiffs seem to think that unless the creditor assigns the debt at the start to a collection agency, the agency is a flat-rater. But there is nothing in the statute

to equate participation in collection with ownership of the debt.

It is ironic that the named plaintiffs in a class action directed against a debt collector should be accusing the debt collector of being insufficiently aggressive in its efforts to collect debts owed by the members of the class; but in any event the claim was correctly dismissed. We reject the two decisions on which the plaintiffs rely (neither an appellate decision) that could be thought inconsistent with our conclusion. They are *Randle v. GC Services, L.P.*, 25 F.Supp.2d 849, 854 (N.D.Ill.1998), and *In re Slough*, 70 F.T.C. 1318, 1966 FTC Lexis 33, *78–80 (1966), affirmed on other grounds under the name of *Slough v. FTC*, 396 F.2d 870 (5th Cir.1968).

 The plaintiffs have another claim, this one under the general provisions of the Fair Debt Collection Practices Act forbidding deceptive debt collection practices. 15 U.S.C. §§ 1692e, 1692e(10). On the reverse of the dunning letters that North Shore sends appears a paragraph which begins: "The State of Colorado requires that we furnish Colorado residents with the following information. . . ." A list of the rights that Colorado residents have to limit further communications from a debt collector follows. The paragraph is not claimed to be inaccurate. The argument is, rather, that it implies that nonresidents of Colorado do not have similar rights, whereas in fact the Fair Debt Collection Practices Act itself confers similar rights on debtors. 15 U.S.C. § 1692c(c). In other words, the reader of the paragraph is assumed to react by saying to himself, "Since I'm not a resident of Colorado, I guess I have no right to limit further communications from this pesky debt collector." This is fantastic conjecture. Since the Fair Debt Collection Practices Act does not require that a copy or summary of it be furnished with every (or any) dunning letter, it is unlikely, to say the least, that recipients of such letters, unless they happen to be class action lawyers specializing in consumer finance litigation, have any idea of what specific federal or state rights they might have; so they have no benchmark against which to compare the rights that Colorado law confers. And far from implying that Coloradans have superior rights, the paragraph by its opening sentence makes clear that Colorado merely requires that the debt collector furnish Colorado residents with the specified information. The implication is not that such residents have more rights than residents of other states, but, at most, that they are less sophisticated and therefore need more information about their rights. Realistically, the only reaction of a Colorado nonresident to the paragraph would be that it had nothing to do with him.

■ Any document can be misread. The Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one. *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994); *Clomon v. Jackson*, 988 F.2d 1314, 1319–20 (2d Cir.1993).

Affirmed.