In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1797

Lori Pettit,

Plaintiff-Appellant,

v.

Retrieval Masters Creditors Bureau, Inc.,
and Russell Fuchs,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 1154--Rebecca R. Pallmeyer, Judge.

Argued October 25, 1999--Decided May 9, 2000

Before Easterbrook, Manion, and Rovner, Circuit
Judges.

Manion, Circuit Judge.  Lori Pettit claims that
the Retrieval Masters Creditors Bureau
(Retrieval) and its president--Russell Fuchs--
violated the Fair Debt Collection Practices Act
(FDCPA) by using its name in a collection letter.
Specifically, she contends that the name
"Retrieval Masters Creditors Bureau,
Incorporated" is deceptive because it leads
unsophisticated debtors to believe that Retrieval
is a credit bureau rather than a collection
agency. The district court granted summary
judgment for Fuchs because he is not a "debt
collector." It also granted summary judgment for
Retrieval based on its view that the letter was
not deceptive as a matter of law. We affirm
because under the FDCPA Fuchs is not a debt
collector and because Pettit failed to create a
genuine issue of material fact as to whether an
unsophisticated debtor would find Retrieval's
name misleading. We also reject her argument that
her own subjective belief that all debt
collectors are credit bureaus results in
liability for Retrieval Masters.

A. Liability of the Debt Collector's
Shareholders or Officers Under the FDCPA

The FDCPA is designed to protect against abusive debt collection practices which would likely disrupt a debtor's life. Mace v. Van Ru Credit Corp., 109 F.3d 338, 343 (7th Cir. 1997). Its provisions generally apply only to debt collectors. See 15 U.S.C. sec. 1692(e); Transamerica Fin. Servs., Inc. v. Sykes, 171 F.3d 553, 554 n.1 (7th Cir. 1999); Whitaker v. Ameritech Corp., 129 F.3d 952, 958 (7th Cir. 1997). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. sec. 1692a(6).

Pettit argues that Russell Fuchs--as the largest shareholder and president of Retrieval Masters-- is a debt collector under the terms of the FDCPA, and thus is personally liable for any violations of the Act perpetrated by Retrieval, or at least for those violations in which he was intimately involved. The district court rejected this argument and held that Fuchs is not liable under the FDCPA because he exercised little or no day-to-day control over Retrieval Masters. Pettit v. Retrieval Masters Creditors Bureau, Inc., 42 F. Supp.2d 797, 805 (N.D. Ill. 1999). But under our holding in White v. Goodman, the extent of control exercised by an officer or shareholder is irrelevant to determining his liability under the FDCPA. 200 F.3d 1016, 1019 (7th Cir. 2000). Because such individuals do not become "debt collectors" simply by working for or owning stock in debt collection companies, we held that the Act does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced. Id.; Aubert v. American Gen. Fin., Inc., 137 F.3d 976, 979-80 (7th Cir. 1998). Rather, the FDCPA has utilized the principle of vicarious liability. See Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir. 1996); Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994). Just as in the Title VII context, the debt collection company answers for its employees' violations of the statute. With vicarious or respondeat superior liability, the debt collection company "and its managers have the proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability." U.S. EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1282 (7th Cir. 1995). Individuals who do not otherwise meet the statutory definition of "debt collector"

cannot be held liable under the Act. Transamerica, 171 F.3d at 554 n.1. As we mentioned in White, FDCPA suits against the owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions. 200 F.3d at 1019. The holding of White is equally applicable to this case, so regardless of whether Fuchs exercised extensive control over Retrieval Masters, the district court correctly granted summary judgment for Fuchs. Of course, Pettit may still seek redress from Retrieval Masters for any violations of the Act committed by Fuchs, since it is undisputed that Retrieval is a debt collector.

B.  The FDCPA and the Unsophisticated Debtor

  The FDCPA specifically prohibits a "false representation or implication that a debt collector operates or is employed by a consumer reporting agency . . . ." 15 U.S.C. sec. 1692e(16). A consumer reporting agency is "any person which, for monetary fees . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. sec. 1681a(f). The purpose of this provision is to prevent debt collectors from coercing payments from debtors by falsely leading them to believe that the failure to pay the debt will adversely affect the debtor's credit rating and ability to obtain credit. Cf. McKenzie v. E.A. Uffman & Assocs., Inc., 119 F.3d 358, 361 (5th Cir. 1997).

  Practices purporting to violate the Act must be viewed from the objective standard of an "unsophisticated debtor." Bartlett v. Heibl, 128 F.3d 497, 500 (7th Cir. 1997); Jang v. A.M. Miller & Assoc., 122 F.3d 480, 483 (7th Cir. 1997). In attempting to describe this hypothetical debtor we have recognized that he is not as learned in commercial matters as are federal judges, see Walker v. National Recovery, Inc., 200 F.3d 500, 501 (7th Cir. 1999), but neither is he completely ignorant. Thus, on the one hand, we have described an unsophisticated debtor as "uninformed, naive, or trusting." Gammon v. GC Servs., Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994). At the same time, we have rejected the "least sophisticated debtor" standard used by some other circuits because we don't believe that the unsophisticated debtor standard should be tied to "the very last rung on the sophistication ladder." Id. Instead, we and other courts have held that our uneducated debtor possesses rudimentary knowledge about the financial world, is wise enough to read

collection notices with added care, possesses "reasonable intelligence," and is capable of making basic logical deductions and inferences. See Chaudhry v. Gallerizzo, 174 F.3d 394, 408-09 (4th Cir. 1999); United States v. National Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996); Gammon, 27 F.3d at 1257; Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993). Furthermore, while our unwary debtor may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion. White, 200 F.3d at 1020; Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir. 1997). According to our unsophisticated debtor standard, a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled. Gammon, 27 F.3d at 1260 (Easterbrook, J., concurring). With this standard in mind, we turn to the letter at hand.

C.  No Genuine Issue of Material Fact

   The first thing a person notices when reading the letter is the name "RETRIEVAL MASTERS CREDITORS BUREAU, INC." which is prominently displayed, in capital letters, at the top of the correspondence. See Appendix. Almost as prominent are the words, also in capital letters, "RCMB COLLECTION AGENCY". In smaller type, the letter also informs Pettit that Retrieval Masters is a member of the "American Collectors Association, Incorporated." The body of the letter plainly states that "your account is now being handled by debt collectors . . .", and it warns Pettit that a failure to pay the debt might result in her name being placed on the "National Delinquent Debtor File, which could affect your ability to obtain certain types of credit . . . ." The letter is signed by a person identified as a "Collection Manager." Finally, the letter instructs Pettit to examine the reverse side, which informs her in plain English that "[t]his is an attempt to collect a debt."

   The district court held that this letter would not dupe an unsophisticated debtor into believing that Retrieval Masters was a credit bureau. Pettit, 42 F. Supp.2d at 810. The court based its holding on the fact that the letter does not suffer from the usual defects which result in FDCPA liability. For instance, it does not contain an explicit statement that Retrieval is a credit bureau./1 There are no inconsistent or contradictory assertions concerning Retrieval's status with respect to being a credit bureau or a collection agency, and the letter does not bury or overshadow its identification of Retrieval as a collection agency with a suggestion that it is a credit bureau. Rather, Retrieval's reminder

that the creditor might place Pettit's name on the National Delinquent Debtor File suggests to the reader that Retrieval is not a credit bureau, since it is not the one in charge of the Delinquent Debtor File. As the district court stated: "Obviously, RMCB is warning that Pettit's name will be turned over to a credit reporting agency if she does not pay promptly. If RMCB was falsely suggesting that RMCB itself was a credit bureau, it would not need to threaten to report her to a credit reporting agency." 42 F. Supp.2d at 810.

Undeterred, Pettit points to the obvious similarity between the term "Creditors Bureau" in the defendant's name and the term "credit bureau," and argues that an unlearned debtor might mistakenly read the name as "credit bureau." While it's true that upon cursory review this or any other collection letter could be misread, as we mentioned above, even an unsophisticated debtor reads collection letters carefully so as to be sure of their content. Gammon, 27 F.3d at 1257. A careful reading of the letter would not lead an unsophisticated debtor to believe that Retrieval is identified as a credit reporting agency. So we agree with the district court that any danger of misreading created by simply placing the name "Retrieval Masters Creditors Bureau, Inc." on the letterhead does not violate the Act./2 White, 200 F.3d at 1020; Chaudhry, 174 F.3d at 408; Clomon, 988 F.2d at 1319. So Pettit can't prevail on her "misreading" argument./3

Pettit also argues that an unsophisticated debtor might believe that there is no difference between a creditors' bureau and a credit bureau, or that the collection agency in question is both a credit bureau and a creditors' bureau, and so the letter would be deceiving in this respect. While there may be some merit to this argument, Pettit cannot prevail because at the summary judgment stage of a case she must do more than merely speculate about how a naive debtor would interpret the letter. The non-moving party must offer sufficient evidence to create a genuine factual issue for trial. See Fed. R. Civ. P. 56(e). But Pettit presents little on this point. The best she could come up with was her own self-serving deposition testimony that Retrieval's name led her to believe that the company was a credit bureau. This fails to create a genuine issue as to whether a significant fraction of the population would have believed the same thing after reading this letter. Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (nonmoving party "must supply evidence sufficient to allow a jury to render a verdict in his favor."). We have advised litigants on several

occasions that this feat might be accomplished through the use of survey evidence, see, e.g., Walker, 200 F.3d at 501; Johnson v. Revenue Management Corp., 169 F.3d 1057, 1060 (7th Cir. 1999), but Pettit elected not to take this route. The self-serving opinion of the plaintiff, clearly not an expert or an objective observer, does not create a genuine issue for trial. Therefore, for this reason alone summary judgment was proper.

D. Imputation of Irrationality to the Unsophisticated Debtor

   Another more substantial problem exists with Pettit's reliance on her own deposition testimony. This court has held that it will not ascribe to the hypothetical unsophisticated debtor all of the irrational notions which FDCPA plaintiffs might suggest. White, 200 F.3d at 1020. Yet that is exactly what Pettit asks us to do here. In her deposition she revealed her own subjective standard for an unsophisticated debtor. Pettit essentially contends that no matter what name Retrieval had used, she (as the typical unsophisticated debtor) would have thought that it was a credit bureau, because she thought that credit bureaus and collection agencies were the same thing.

Q:  When you received this letter in August of 1997, what about the letter made you think that it was from a credit bureau?

Pettit:  The name Creditors Bureau.

Q:  Is that the only thing?

Pettit:  Yes.

Q:  But you also knew that it was from a debt collector, right?

Pettit:  I thought they were the same thing.

Pettit Dep. p. 25.

   Pettit's self-serving testimony does not serve her well. Her proposed standard would create liability for debt collectors based on information which the Act requires debt collectors to place in their collection letters. 15 U.S.C. sec. 1692e(11) (debt collector must inform the debtor that it is attempting to collect a debt, and thus that it is a debt collector); Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 399 (6th Cir. 1998) (debt collector must inform the debtor that the dunning letter is from a debt collector who is attempting to collect a debt). We obviously cannot accept

Pettit's claimed level of unsophistication as the level of unsophistication possessed by the typical unsophisticated debtor. If we did, nearly all collection letters from debt collectors would violate the Act. Under Pettit's standard, any letter which states it is an attempt to collect a debt or which states that it is from a collection agency would lead someone with Pettit's mindset to believe not only that the letter is from a collection agency, but also, because she believes that collection agencies are credit bureaus, that the debt collector sending her the letter is a credit bureau. Pettit's proposed standard of unsophistication would mean that all attempts to collect debts by non-credit bureau debt collectors would violate the FDCPA. But the text of the FDCPA implicitly places limits on how far we can go in attributing unenlightened notions to our hypothetical debtor. White, 200 F.3d at 1020; Smith v. Computer Credit, Inc., 167 F.3d 1052, 1055 (6th Cir. 1999) ("A collection agency does not have to stop its collection efforts to comply with the Act."). In short, under the FDCPA, confusion is not in the eyes of the beholder. As we said in White, the "Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one." White, 200 F.3d at 1020. As a matter of law, the extremely low level of sophistication and the high level of irrationality suggested by Pettit is not the standard for unsophisticated debtors. Chaudhry, 174 F.3d at 409 (least sophisticated debtor standard preserves a quotient of reasonableness and presumes a basic level of understanding). Accordingly, the district court correctly granted summary judgment for Retrieval Masters. We

AFFIRM.


/1 Prior to 1979, Retrieval's official name was "Retrieval Masters Credit Bureau, Inc." The name change was engendered by the Federal Trade Commission's suggestion that "Credit Bureau" was misleading. The FTC has made no complaint about Retrieval's present name.


/2 This is not to say that Retrieval Masters couldn't improve the letter. In the future, it might place in its collection letters an explicit statement that it is not a credit reporting agency. As we discuss below, this would not have mattered in Pettit's case because she believed that all debt collectors were credit bureaus, but such a disclaimer may prove helpful to some

debtors.

/3 Pettit attempts to support her argument with a Fifth Circuit opinion dealing with a collection agency that used the name "Collections Department, Credit Bureau of Baton Rouge." See McKenzie, 119 F.3d at 358. The McKenzie court found that this name would lead debtors to believe that the company was a credit reporting agency. Obviously that case is distinguishable from the present one for, as we point out above, Retrieval Masters did not use the term "credit bureau" in its name or any other part of the letter.

APPENDIX