In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 19-1210 & 19-1334

ERIN JOHNSON,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

ENHANCED RECOVERY COMPANY,
LLC,

*Defendant-Appellee, Cross-Appellant.*

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 16 CV 330 — **Philip P. Simon**, *Judge.*

ARGUED SEPTEMBER 13, 2019 — DECIDED JUNE 9, 2020

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge*. Erin Johnson filed this putative class
action against Enhanced Recovery Company, LLC (ERC),
alleging that it sent her a misleading collection letter in
violation of the Fair Debt Collection Practices Act ("FDCPA").
15 U.S.C. §§ 1692-1692p. ERC moved to dismiss Johnson's

claim on the grounds that no reasonable consumer could have been misled by its letter. The district court denied ERC's motion and certified a class composed of all individuals in Indiana who had received a collection letter like Johnson's from ERC between July 2016 and August 2017. *See* Fed. R. Civ. P. 23(a) and (b)(3) (describing class certification requirements). On the parties' cross motions for summary judgment, the district court entered judgment for ERC. Johnson appeals, and ERC cross appeals from the denial of its motion to dismiss Johnson's complaint under Federal Rule of Civil Procedure 12(b)(6). Because Johnson failed to present any evidence beyond her own opinion that ERC's letter was misleading, we affirm the judgment of the district court.

## I.

The facts are straightforward. ERC is a third-party debt collector that attempted to collect on a delinquent debt of Johnson's arising from a broken contract for a cell phone with Sprint wireless. In early March 2016, ERC acquired Johnson's debt from Sprint and began its collection efforts. Such efforts are highly regulated by the FDCPA, which was enacted to eliminate the use of abusive debt collection practices against vulnerable debtors. 15 U.S.C. § 1692(e) (congressional findings and statement of purpose). To that end, § 1692e broadly prohibits debt collectors from using "any false, deceptive, or misleading representation" in connection with the collection of a debt.

In total, ERC sent Johnson three dunning letters dated, respectively, March 8, April 21, and June 6, 2016. Johnson, whose version of events we accept as true at this stage of the

proceedings, denies having ever seen the March 8 letter. It stated in relevant part:

COLLECTION NOTICE

ERIN JOHNSON

Our records indicate that your balance with Sprint remains unpaid; therefore your account has been placed with ERC for collection efforts.

Upon receipt and clearance of $1,094.72, your account will be closed and collection efforts will cease.

This letter serves as notification that your delinquent account may be reported to the national credit bureaus.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

ERC mailed Johnson the second dunning letter, which forms the basis of her lawsuit, forty-four days later, on April 21, 2016. The top right corner of the letter contains the date and a heading identical to one appearing in the March letter. That heading identifies the creditor as Sprint, lists an account number, and says in bold, capital letters, "YOU HAVE OPTIONS." As relevant to Johnson's claim, the remainder reads as follows:

Our records indicate that your balance with Sprint remains unpaid; therefore your account has been

placed with ERC for collection efforts. We are willing to reduce your outstanding balance by offering discounted options.

Option 1: Pay the settlement of $875.78, please remit by May 26, 2016.

Option 2: Pay the settlement of $930.51, payable in 2 monthly payments of $465.26.

Option 3: Pay the settlement of $985.25, payable in 3 monthly payments of $328.42.

We are not obligated to renew this offer.

This letter serves as notification that your delinquent account may be reported to the national credit bureaus.

Payment of the offered settlement amount will stop collection activity on this matter. We will inform Sprint once the payment(s) is/are posted. Payment of the settlement amount will not restore your service with Sprint. If you wish to establish service with Sprint at a future date, the remaining balance must be paid in full prior to the consideration of any future services being granted.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

ERC reported Johnson's delinquent Sprint account to the national credit bureaus on April 24, 2016. It sent the third and

final dunning letter to Johnson on June 6, 2016. With the exception of the specifics of the three settlement options, which were for further reduced amounts and specified a date in July as opposed to May to remit payment, the June letter was identical to the April letter.

In July that same year, Johnson filed this suit, maintaining that the April letter was misleading in violation of § 1692e. She focused primarily on the sentence, "This letter serves as notification that your delinquent account may be reported to the national credit bureaus." According to Johnson, the statement that her debt *may* be reported to credit bureaus was deceptive. As Johnson read the letter, the phrase "may be reported" implied *future* reporting, and by the time she received the letter her debt had already been reported. She also singled out the sentence near the end of the letter stating, "Payment of the offered settlement amount will stop collection activity on this matter." Johnson claimed this statement amounted to a promise by ERC that *if* she took advantage of the first settlement offer and paid by May 26, *then* ERC would not report her debt to the national credit bureaus.

As noted above, the district court declined to dismiss Johnson's claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6), noting that whether a communication is confusing or misleading under § 1692e is ordinarily a question of fact. Because the district court believed the allegedly confusing interpretation of the letter proposed by Johnson was at least "plausible," it concluded that dismissal would be premature. After class certification and on the parties' cross-motions for summary judgment, however, the court granted summary judgment to ERC based on Johnson's failure to adduce

necessary evidence that the language in question would be confusing or misleading to a significant fraction of the population. Johnson appeals, arguing both that summary judgment for ERC was inappropriate, and that she is entitled to summary judgment. ERC cross-appeals, claiming that the district court erred by denying its motion at the outset to dismiss Johnson's claim for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## II.

We begin with ERC's contention that the district court should have dismissed Johnson's complaint for failure to state a claim for relief under Rule 12(b)(6).[1] In reviewing a motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Heredia v. Capital Mgmnt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). Moreover, complaints alleging misleading communications under § 1692e are rarely subject to dismissal for failure to state a claim because in this circuit, whether a communication is false, deceptive, or misleading under the FDCPA is a question of fact. *See Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) ("[W]e treat issues of deception as ones of fact rather than of law.");

---

[1] ERC's cross-appeal is premised on the argument that the language in its collection letter does not violate the FDCPA as a matter of law. Thus, it argues that granting its motion would "enlarge" the district court's judgment and spare ERC from defending against future FDCPA claims in other jurisdictions. Claiming that a judgment in its favor would still have no impact beyond herself and the certified class members, Johnson disputes that ERC is pursuing a proper cross-appeal. Because we affirm the district court's conclusion that Johnson's complaint was not subject to dismissal under Rule 12(b)(6), it is unnecessary to settle this controversy.

*Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) ("As a general matter, we view the confusing nature of a dunning letter as a question of fact that, if well-pleaded, avoids dismissal on a Rule 12(b)(6) motion.") (internal citation omitted); *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 760 (7th Cir. 2006) (noting that inquiries under § 1692e "are necessarily fact bound" and that in "most instances" application of Rule 12(b)(6) "will require that the plaintiff be given an opportunity to demonstrate that his allegations are supported by a factual basis responsive to the statutory standard"). Despite this general rule, a claim under § 1692e may be dismissed when it is clear from the face of the communication that no reasonable person, however unsophisticated, would be deceived by the allegedly false or misleading statement. *See Heredia*, 942 F.3d at 814; *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574–75 (7th Cir. 2004) ("If it is apparent from a reading of the letter that not even 'a significant fraction of the population ' would be misled by it… the court should reject it without requiring evidence beyond the letter itself.").

ERC offers two arguments to support its claim that Johnson's proposed interpretation of its April letter is so implausible as to be subject to dismissal. First, it insists that the statement "your delinquent account may be reported to the national credit bureaus" could not be misleading because it tracks certain safe harbor model language in Regulation V, which governs the Fair Credit Reporting Act. *See* 12 C.F.R. Part 1022, App. B, Model Notices of Furnishing Negative Information, Model Notice B-1; *see also Evory*, 505 F.3d at 776 (noting that dismissal of a § 1692e claim on the pleadings may be appropriate when defendant used statutory language or our safe-harbor

language). Johnson, however, notes that the allegedly confusing aspect of the phrase "may be reported" stemmed from the fact that her debt *had already been reported* by the time she received the letter. Thus, she points out, assuming the Fair Credit Reporting Act safe harbor language is even relevant[2], ERC should have used the proposed language in Model Notice B-2, which states in relevant part, "We *have told* a credit bureau about a late payment, missed payment, or other default on your account. 12 C.F.R. Part 1022, App. B, Model Notice B-2 (emphasis added). In light of the question whether the Fair Credit Reporting Act applies at all to ERC and if so, whether it should have used Model Notice B-1 ("We may report… ) or B-2 ("We have told a credit bureau…"), ERC's use of the model language does not eliminate the factual question of whether Johnson stated a claim under the FDCPA.

Second, ERC dismisses as "bizarre" Johnson's proposed interpretation of the sentence, "Payment of the offered settlement amount will stop collection activity on this matter." As ERC describes it, Johnson is arguing that the phrase "stop collection activity" amounts to a misleading promise to "*prevent any* collection activity," an interpretation ERC deems obviously unsupportable because the letter itself represents collection activity.

But ERC misstates Johnson's claim. Johnson never claims the letter falsely suggests that she could prevent *any* collection

---

[2]  The quoted safe harbor language applies to "financial institutions," defined as banks, savings and loan associations, credit bureaus, or other holders of transaction accounts, none of which would obviously apply to ERC. *See* 15 U.S.C. § 1681a(t) (defining the term "financial institution").

activity by paying the settlement offer. She argues that by including the date of May 26, 2016 with the first listed settlement offer ($875.78), and later stating that the delinquent account "may be reported" to credit bureaus, followed by the assurance that "[p]ayment of the offered settlement amount will stop collection activity on this matter," the April letter gave the impression that credit reporting could be avoided by accepting the first listed settlement offer and paying by May 26th. Whether a significant fraction of debtors would be misled as Johnson describes is questionable, but it is not so implausible as to land her case in the narrow class of cases in which the answer to the factual question of whether the communication is deceptive can be resolved from the face of the pleadings. *See Heredia*, 942 F.3d at 814 ("'[I]n determining whether a statement is confusing or misleading, a district court must tread carefully because district judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects. Accordingly, Rule 12(b)(6) dismissal on that issue is appropriate only if there is no set of facts consistent with the pleadings under which the plaintiffs could obtain relief.'" (quoting *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016))).

We thus turn to Johnson's argument that summary judgment for ERC was improper and that the misleading nature of the April collection letter entitles her to summary judgment. We review the district court's summary judgment ruling de novo, construing all facts and reasonable inferences in favor of the non-moving party. *Richards v. PAR, Inc.*, 954 F.3d 965, 967 (7th Cir. 2020). Summary judgment is appropriate when there

are no disputed material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

As described above, § 1692e of the FDCPA prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Although § 1692e also provides a non-exhaustive list of examples of proscribed conduct, Johnson's claim turns entirely on what she characterizes as the deceptive nature of the April letter.

In determining whether a communication is "false, deceptive, or misleading," we evaluate the disputed language from the objective standpoint of an "unsophisticated debtor." *See Heredia*, 942 F.3d at 815. Our hypothetical unsophisticated debtor is "uninformed, naive," and "trusting," but does possess "rudimentary knowledge about the financial world," and "is wise enough to read collection notices with added care." *Boucher v. Fin. System of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (citations and internal quotations omitted)). She is also "capable of making basic logical deductions and inferences" and possesses "reasonable intelligence." *Heredia*, 942 F.3d at 815 (citation and internal quotations omitted). Though "'our unwary debtor may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion.'" *Id.* (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). In short, "[t]he Act protects the unsophisticated debtor, but not the irrational one." *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). Accordingly, it is not enough for a plaintiff to simply assert confusion; she must demonstrate that the

"language of the letters unacceptably increases the level of confusion." *Durkin v. Equifax*, 406 F.3d 410, 415 (7th Cir. 2005) (quoting *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)) (internal quotations omitted).

We apply this standard by asking whether the disputed language "could well confuse a substantial number of recipients." *Pantoja v. Portfolio Recovery Assoc., LLC*, 852 F.3d 679, 686 (7th Cir. 2017) (citation and internal quotation omitted). To answer this question, we have categorized §1692e cases into three groups. The first category consists of cases where the challenged language is obviously not misleading and no extrinsic evidence is required to demonstrate that a reasonable unsophisticated consumer would not be misled. *Id.* at 686–87. The second category includes those cases where the debt collection language is not deceptive or misleading on its face, but could be construed so as to be confusing or misleading to the unsophisticated consumer. We have held that in these cases, a plaintiff cannot prevail without producing extrinsic evidence, such as consumer surveys, tending to show that unsophisticated consumers are in fact confused or misled by the challenged language. *Id.* The final category of cases involves language that is plainly false, deceptive, or misleading, and therefore requires no additional evidence for the plaintiff to succeed on her claim. *Id.*; *see also Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 322–23 (7th Cir. 2016) (describing three categories of cases applicable to claims under § 1692e based on its general prohibitions against false, deceptive, or misleading statements).

Johnson insists that no additional evidence is required beyond her own opinion that a reasonable but unsophisticated

consumer would interpret the April 21 letter as a "threat to engage in credit reporting" unless the payment was made by May 26, 2016, the date listed with the first settlement offer. Her interpretation turns on what she alleges is the misleading message conveyed by the statement "[t]his letter serves as notification that your delinquent account may be reported to the national credit bureaus" followed in the next paragraph by the statement "[p]ayment of the offered settlement amount will stop collection activity on this matter." First, Johnson insists that the phrase "may be reported to the national credit bureaus" conveys a *future possibility* that her debt could be reported, when in fact by the time she received the letter or shortly thereafter it had already been reported. The problem with this interpretation, which the district court recognized, is that although the word "may" is certainly capable of referring to future events, that is not its only possible usage. According to ERC, the advisement that the debt "may be reported" is intended solely to make the debtor aware that ERC *is capable of* reporting the outstanding debt.

Both proposed interpretations are consistent with commonly understood meanings of "may." The first dictionary definition of "may" offers two possibilities "a – used to indicate a possibility or probability" or "b: have permission to … – used nearly interchangeably with *can*." *See Merriam-Webster Dictionary*, "Definition of *may*," https://www.merriam-webster. com/dictionary/may (emphasis in original) (last visited May 27, 2020). If used to mean has permission to, the letter's "notification" that the debtor's delinquent account "may be reported" simply apprises the recipient that ERC *has permission to* report the delinquent debt. Whether that report-

ing has occurred already, has yet to occur, or never occurs is irrelevant to the truth or falsity of the statement. Instead, the notification is simply a statement of fact. *See Taylor*, 365 F.3d at 575 (rejecting claim of confusion arising from a "clear statement of a truism"). And the fact that a statement explaining ERC's power to report the delinquent debt is followed by another statement (in a new paragraph) explaining that paying the settlement amount will stop collection activity but not restore Johnson's Sprint service is certainly not on its face a promise or guarantee that *if* the offered settlement is paid, *then* the delinquent debt will not be reported. Nor is there anything in the fact that the first—and lowest—listed settlement offer of $875.78 includes a "remit by" date of May 26, 2016 that transforms the later freestanding statement that ERC may report the delinquent debt into a guarantee that reporting can be avoided by remitting payment before May 26th. Accordingly, Johnson's claim does not fall into the third category of cases involving plainly false, deceptive, or misleading language. Nor, as discussed above, is the challenged language of the letter so "plainly and clearly not misleading" that her claim belongs in the first category. *Janetos*, 825 F.3d at 322–23.

Johnson's claim thus belongs in the second category, for which she bears the burden of producing evidence of confusion (beyond her own) using an objective measure such as "a carefully designed and conducted consumer survey." *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (internal quotations and citation omitted). As the district court recognized, her failure to do so dooms her claim.

Rather than confront this fatal flaw, Johnson insists that no further evidence is required when a communication has two

possible readings, one of which is misleading. To support this position, she cites cases from four other circuits. None apply here. Tellingly, each of the circuits cited by Johnson uses the "least sophisticated consumer" standard that we have specifically rejected to assess whether a communication is confusing under the FDCPA. *See Pettit*, 211 F.3d at 1060 ("[W]e have rejected the 'least sophisticated debtor' standard used by some other circuits because we don't believe that the unsophisticated debtor standard should be tied to 'the very last rung on the sophistication ladder.'") (quoting *Gammon*, 27 F.3d at 1257). Moreover, none have any bearing on Johnson's failure to provide any outside evidence as to the likelihood that a hypothetical unsophisticated debtor (or even the least sophisticated debtor) would in fact be confused by the language in ERC's letter.

Johnson next maintains that she need not present extrinsic evidence of confusion because ambiguity itself *is* evidence of confusion. Johnson suggests it is irrelevant whether her claim is analyzed under the "least sophisticated" consumer standard or under our "unsophisticated consumer" standard because under what she refers to as the "ambiguity principle," she need only demonstrate the letter could plausibly be read in two possible ways, one of which is deceptive. Johnson's framing of the argument, however, reveals its fundamental flaw: although such a showing may be sufficient to withstand dismissal for failure to state a claim, at this stage of the proceedings, Johnson must do more than simply propose a potentially misleading interpretation of ERC's letter. Indeed, that is why the standard used *does* matter: "because we have rejected the 'least sophisticated consumer' standard, a letter must be confusing to 'a

significant fraction of the population.'" *Lox v. CDA, Ltd.*, 689 F.3d 818, 821 (7th Cir. 2012) (quoting *Taylor*, 365 F.3d at 574). But Johnson has failed completely to demonstrate that a significant—indeed *any* (beyond herself)—fraction of the population would read the April letter as promising to forgo credit bureau reporting if Johnson paid her debt by May 26th. *See Pettit*, 211 F.3d at 1061 (noting that debtor could not prevail on FDCPA claim "because at the summary judgment stage of a case she must do more than merely speculate about how a naive debtor would interpret the letter").

By citing bits and pieces of inapposite cases[3], Johnson sidesteps entirely the requirement, applicable here, that the plaintiff bears the burden of demonstrating that language not misleading on its face yet that could plausibly be read in a misleading or deceptive manner would in fact mislead a "significant fraction" of the population. As described above, Johnson's complaint proposes an interpretation of ERC's letter that *could be* confusing to an unsophisticated debtor. But without evidence of how such a debtor would *actually* read the

---

[3] For example, Johnson quotes *Pantoja*, 852 F.3d at 687, for the principle that "[w]here the FDCPA requires clarity … ambiguity itself can prove a violation." Although she relies heavily on *Pantoja*, the issue there involved a dunning letter attempting to collect a time-barred debt, and we noted that external evidence of confusion was unnecessary because the letter exemplified "careful and deliberate ambiguity … chosen to obscure from the debtor that the law prohibits the collector from suing to collect his debt or even threatening to do so." *Id.* at 687. There is no evidence here of similar "deliberate ambiguity" or attempts to obfuscate the debtor's rights in ERC's letter. Thus *Pantoja*, like other cases cited by Johnson, does not support her claim that she needed not present evidence as to whether an unsophisticated debtor would be confused by the April letter.

letter, Johnson cannot make the required showing that the language of the April letter "unacceptably increases the level of confusion." *Johnson*, 169 F.3d at 1060. In order to arrive at the allegedly misleading interpretation Johnson proposes, the reader must first assume the "remit by" date of May 26 listed at the beginning of the letter with two other settlement offers is linked to the statement, appearing much later in the letter, that the debt "may" be reported to credit bureaus. Next, the phrase "may be reported" must be defined solely as a statement of *prospective* possibilities as opposed to the equally likely usage indicating ability or authority to report the debt. These proposed interpretations must then be combined with the statement in *yet another paragraph* informing the debtor that payment of the settlement offer "will stop collection activity" (but not restore service with Sprint), to yield the allegedly misleading interpretation that *if* the debtor pays the first offered settlement by May 26, *then* ERC will not report the delinquent debt to the national credit bureaus. Because the language in the April letter, standing alone, makes no such promise, Johnson bore the burden of producing evidence beyond her own say so demonstrating the likelihood that an unsophisticated debtor would conclude as much. It is not enough that Johnson reached such a conclusion; "under the FDCPA, confusion is not in the eyes of the beholder." *Pettit*, 211 F.3d at 1062. Her belief that the letter offered to forgo reporting her debt if she paid by May 26th (or, inversely threatened to report the debt unless she paid by May 26th) fails to create a genuine issue as to whether a significant fraction of the population would reach such a conclusion after reading the April letter. *See id.* at 1061. The FDCPA is "not violated by a

dunning letter that is susceptible [to] an ingenious misreading, for then every dunning letter would violate it. [It] protects the unsophisticated debtor, but not the irrational one." *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). Here Johnson presented one such "ingenious" reading of ERC's letter and then failed to prove by any objective measure that a significant fraction of its recipients were misled. *See Sims*, 445 F.3d at 963. Our case law makes clear that "mere speculation" by the plaintiff that a collection letter is misleading is insufficient to survive a debt collector's motion for summary judgment. *See Durkin*, 406 F.3d at 419. In denying ERC's motion to dismiss Johnson's complaint, the district court observed that "as the case proceeds, the parties may (both might, and are permitted to) present evidence about how unsophisticated consumers would interpret" the allegedly misleading statements in ERC's April letter. Because Johnson chose instead to rely solely on her "speculation" to support her claim, summary judgment for ERC was appropriate.

## III.

For the foregoing reasons, we AFFIRM the district court's judgment in all respects.