Tammy RUSSELL, Roger Russell,
and Mary Hall, Plaintiffs,

v.

GOLDMAN ROTH ACQUISITIONS,
LLC, and Robert Vaiden,
Defendants.

No. 1:10–cv–1224.

United States District Court,
W.D. Michigan,
Southern Division.

March 12, 2012.

Gary D. Nitzkin, Nitzkin & Associates, Southfield, MI, for Plaintiffs.

Brendan Hoffman Little, Lippes Mathias Wexler Friedman LLP, Buffalo, NY, for Defendants.

***OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT***

PAUL L. MALONEY, Chief Judge.

This case involves a claim under the Fair Debt Collection Practices Act ("FDCPA") and several related claims based on the actions taken by Defendants Goldman Roth Acquisitions, LLC ("Goldman Roth") and Robert Vaiden (a/k/a William Kramer) in trying to collect on a debt allegedly owed by Plaintiff Roger Russell. Mr. Russell, along with his wife, Tammy Russell, and Tammy's mother, Mary Hall, bring claims here. Magistrate Judge Scoville has already entered default against Goldman Roth for their willful failure to respond to discovery requests, so only the claims against Defendant Vaiden remain live.

Before the court is Plaintiffs' motion for summary judgment on their FDCPA claim only. (ECF No. 47.) For the reasons discussed herein, Plaintiffs' motion is hereby granted as to Mr. and Mrs. Russell's claim under 15 U.S.C. § 1692c and granted as to Mr. Russell's claim under 15 U.S.C. § 1692g, but denied as to Plaintiffs' claims under 15 U.S.C. §§ 1692d and 1692e.

I. BACKGROUND

A. Plaintiffs' Factual Allegations

In September 1993, Plaintiff Roger Russell bought some furniture from Art Van Furniture, Inc. on a "12 months same as cash" credit offer. Mr. Russell alone is listed as the obligor on this debt ("the Art Van Debt"); his wife, Plaintiff Tammy

Russell, was not involved with the purchase. (See Pl.'s Br., Ex. 4.) Plaintiffs allege that Mr. Russell had repaid this loan sometime before mid-to-late 2010, when the events leading to this suit took place.

Defendant Goldman Roth Acquisitions, LLC ("Goldman Roth") is in the business of purchasing consumer debt from various creditors and attempting to collect on those debts itself. Goldman Roth bought the Art Van Debt in November 2010.

Plaintiffs allege that Tammy Russell started getting calls from "William Kramer" at Goldman Roth in July of 2010.[1] As the Plaintiffs learned in discovery, "William Kramer" is actually an alias used by Defendant Robert Vaiden. At all times relevant to this suit, Defendant Vaiden comanaged Goldman Roth's day-to-day operations.

According to the Amended Complaint, Mr. Vaiden first introduced himself to Mrs. Russell as an attorney representing HSBC. After the first call in July 2010, Vaiden allegedly called her twice a week through mid-to-late October. Around that time, Defendant Vaiden began calling Tammy Russell's mother, Plaintiff Mary Hall, as well. On his third call to Ms. Hall, Vaiden allegedly "disclosed the debt[,] misrepresented to Ms. Hall that Tammy was an obligor on it[, and] threatened to garnish Roger's wages."

In late October, Ms. Hall told Vaiden that the Russells' son, Jordan, was in the hospital with a serious brain injury. After this, Mr. Vaiden allegedly began calling Tammy Russell more often, now on her cellular phone (which Ms. Hall had given him the number to). Plaintiffs claim that Mr. Vaiden made a number of other phone calls to Ms. Hall through early December 2010, including one where he told Ms. Hall

that he had a court order against the Russells, that there could be a warrant out for their arrest, and that they could lose their house, car, and other assets if they did not pay back the loan. On November 29, 2010, Mr. Vaiden took notes in Goldman Roth's computer software regarding a call with Ms. Hall. Mr. Vaiden wrote: "spoke with mary the mother. she is very nice, said she helped out the [cardholder] in the past, but feels like she needs to stop because she wonders when it will all end WE MAY STILL BE ABLE TO TALK HER INTO IT." (Pl.'s Br., Ex. 14, at 2.) In all, Ms. Hall testifies to seven conversations with Mr. Vaiden from October through early December 2010, as well as at least one instance where Mr. Vaiden tried to call her approximately 11 times in a single day.

Mr. Vaiden also contacted Nicole Russell, the adult daughter of Tammy and Roger. On November 2, 2010, he left a voice mail on Nicole's phone wherein he allegedly claimed to be a lawyer representing her parents regarding her brother's brain injury. When Tammy called Mr. Vaiden back, he allegedly told her that she was going to lose her house, car, and other property and that Goldman Roth was going to freeze the Russells' bank accounts and garnish their wages. Tammy agreed to discuss payment after Roger's unemployment check arrived, but Vaiden's daily calls continued nonetheless. On November 16, Tammy called Mr. Vaiden as promised. He initially demanded payment of $2,600, then reduced it to $1,500. Tammy agreed to pay $550, and she called him back that evening with her debit card information.

Plaintiffs allege that Mr. Vaiden continued to call Tammy daily through December 10, 2010. Mr. Vaiden also allegedly

---

1. Plaintiffs do not try to reconcile this allegation with the undisputed fact that Goldman Roth bought the Art Van Debt months after this date.

called a number of third parties regarding the Art Van Debt. According to the Amended Complaint, he called the Russells' neighbor, Jacques Henning; Tammy's friend from high school, Rae Lynn Rusco; and Katie Van Dunin (relationship unknown) during a single day, December 6, 2010. Mr. Henning took written notes during the call before passing on the message that Mrs. Russell was to call William Kramer, a "Goldman & Roth Attorney," regarding "case # 2021368." (Pl.'s Br., Ex. 9.)

Plaintiffs also allege that Mr. Vaiden left messages for Mrs. Russell with her ex-stepmother, Candy Hall, and Missy Gelderbloom, whose children Mrs. Russell babysits. At her deposition, Ms. Gelderbloom produced the voicemail that Mr. Vaiden had left her in October 2010. In this message, Mr. Vaiden—speaking as "William Kramer calling from Goldman and Roth"—stated that he was trying to get in touch with Tammy Russell and that Ms. Gelderbloom was "left as a contact." He needed to get in touch with Mrs. Russell "concerning some pending paperwork that's in my office that is scheduled to be filed. It is very, very important information that I need to discuss with Tammy right away." (Pl.'s Br., Ex. 11, at 5–6.)

Plaintiffs allege that as a result of these calls, the formerly close relationship between Mary Hall and Tammy Russell was significantly strained. Ms. Hall is now scared to answer her telephone, and Mrs. Russell was forced to switch her anti-anxiety medications.

At no point did Mr. Vaiden or anyone at Goldman Roth speak with Roger Russell about the Art Van Debt.

## B. Defendant's Factual Allegations

Defendant Vaiden has a significantly different take on the debt-collection efforts. He claims that Goldman Roth first bought the Art Van Debt on November 2, 2010 and that the company first began making calls regarding the debt on that day. Mr. Vaiden was a supervisor at Goldman Roth at the time, and according to Vaiden, the Art Van Debt was assigned to Nate Ormsby, a debt collector under Vaiden's supervision.

After Goldman Roth acquired the Art Van Debt, Mr. Ormsby began making calls in an attempt to get in touch with Roger Russell. Ormsby allegedly made calls to several different numbers and left at least one message. Defendant claims that Tammy Russell called Goldman Roth that very evening and talked with Mr. Vaiden personally. During this call, Mrs. Russell "voluntarily agreed to pay the Debt in full for a reduced amount," and she authorized $2,650 worth of payments to be processed over the course of the month.

Defendant Vaiden claims that the bank returned Mrs. Russell's payments for insufficient funds. Because of this, "Ormsby and Vaiden spent the next several days attempt[ing] to call Tammy Russell … without success." On November 17, 2010, Mr. Ormsby finally spoke with Mrs. Russell, who agreed to pay $550 toward the debt. This payment also failed, and Goldman Roth continued trying to contact Mrs. Russell. The next day, Mr. Vaiden again got in touch with Tammy, who successfully made a payment on the debt and "pledged to have the balance paid in full by month's end."

Vaiden claims that he continued to reach out to Mrs. Russell during that month. Trying "an alternate phone number" on November 23, he got in touch with "[a] young lady"—Mrs. Russell's adult daughter, Nicole—and left a message for Tammy. On November 29, Vaiden admits speaking with Plaintiff Mary Hall, "who volunteered that she was both familiar and concerned with Tammy Russell's financial situation." According to Defendant, Mrs.

Russell attempted to make another payment on November 30, which again failed. Goldman Roth then allegedly "spent the next several weeks trying to reach Tammy Russell to no avail," at which point Defendant's version of the facts ends.

## C. Procedural History

On December 10, 2010, Plaintiffs Tammy Russell and Roger Russell filed a complaint in this court against Defendants Goldman Roth Acquisitions, LLC ("Goldman Roth") and William Kramer. (ECF No. 1.) Shortly thereafter, Plaintiffs filed an amended complaint properly identifying "William Kramer" as Defendant Robert Vaiden and adding Mary Hall as a plaintiff. (ECF No. 17.) Plaintiffs raise six counts in this Amended Complaint: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Michigan Collection Practices Act; (3) violation of the Michigan Occupational Code; (4) intentional infliction of emotional distress; (5) conversion; and (6) invasion of privacy. Shortly before the close of discovery, Plaintiffs filed the present Motion for Summary Judgment on Count I (FDCPA) only. (ECF No. 47.)

At some point in the proceedings, Defendant Goldman Roth stopped responding to discovery requests. Magistrate Judge Scoville granted Plaintiffs' Motion to Compel in September 2011, but Goldman Roth still did not produce the ordered discovery. On Plaintiffs' motion, Magistrate Judge Scoville entered default against Goldman Roth on October 24, 2011. (ECF No. 68.)

## II. LEGAL FRAMEWORK

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Tucker v. Tennessee,* 539 F.3d 526, 531 (6th Cir.

2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe,* 410 F.3d 810, 817 (6th Cir.2005) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. Fed.R.Civ.P. 56(c), (e); *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505.

## III. ANALYSIS

This motion for summary judgment covers only Count I's alleged violation of the FDCPA. Within this count, Plaintiffs claim several violations of the FDCPA. First, Plaintiffs argue that Defendant Vaiden violated the rights of Roger Russell and Tammy Russell under § 1692c. Second, they argue a violation of § 1692d against all Plaintiffs. Third, they argue that Vaiden violated each Plaintiff's rights under § 1692e. Finally, they argue that Vaiden violated Roger Russell's rights under § 1692g.

### A. Section 1692c—Communications with Third Parties

The FDCPA prohibits debt collectors in many cases from contacting third parties

regarding collection of a debt. Specifically, it provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). Plaintiffs claim that Defendant violated this section as to Roger Russell and Tammy Russell by calling various third parties in connection with Mr. Russell's debt.

Defendant first argues that Tammy Russell does not have standing to claim a violation of this section, because she is not a "consumer" under the FDCPA. He argues that Mrs. Russell "knew at all relevant times that the debt Goldman Roth was seeking to collect was owed by Roger Russell," not a debt owed by her. Therefore, she was not "obligated or allegedly obligated to pay" the Art Van Debt and is not a "consumer." *See* 15 U.S.C. § 1692a(3) (defining "consumer").

This argument fails. Plaintiff alleges that Mr. Vaiden claimed that Tammy was obligated to repay the Art Van Debt and that he actually tried to get her to pay the debt. Defendant never refutes these factual allegations, and he fails to point to any contrary evidence. It is undisputed that Mr. Vaiden called Tammy Russell repeatedly, over a period of months, in an attempt to get her to pay the Art Van Debt. To say in the face of those attempts that she was never "allegedly obligated to pay" that debt strains credibility. Tammy Russell, therefore, falls under the § 1692a(3) definition of "consumer" as a person "allegedly obligated to pay" the debt. *See Broadnax v. Greene Credit Serv.,* 106 F.3d 400 (Table), 1997 WL 14777, *3 (6th Cir.1997).

Defendant's argument also fails for another reason. Defendant ignores the effect of § 1692c(d), which defines "consumer" more broadly than the rest of the FDCPA: "For the purpose of this section, the term 'consumer' includes the consumer's spouse...:" 15 U.S.C. § 1692c(d). This language clearly includes Tammy Russell as a "consumer" for purposes of this section.

Moving on to the substance of Plaintiffs' claim, Defendant Vaiden disputes that his communications with third parties violated § 1692c. He argues that his third-party communications were not made "in connection with the collection of [the] debt," as required by § 1692c(b). Instead, Vaiden argues first that the communications were "made for the purpose of contacting and/or locating Tammy Russell regarding the [payments] she personally made to Goldman Roth" that were later returned for insufficient funds. Mr. Vaiden argues that when these attempted payments failed, they obligated Mrs. Russell to make good on the amounts. Vaiden argues that his later calls were regarding these new obligations, to which the FDCPA does not apply, rather than about the Art Van Debt itself.

Mr. Vaiden walks a thin line here. He must argue that any obligation created by these returned payments is not subject to the FDCPA, because then his attempts at collection would be subject to that statute. But he also must distinguish this alleged obligation from the Art Van Debt, because section 1692c(b) limits third-party communications made "in connection with the collection of any debt." By claiming that these payments created a separate obli-

gation not subject to the FDCPA, Mr. Vaiden can argue that his later communications were "in connection with" a separate obligation, not the Art Van Debt, and so the FDCPA no longer governed his conduct.

Mr. Vaiden's first point, at least, is well taken. Section 1692a(6)(F)(ii) states that the term "debt collector" does not apply to the extent someone is attempting to collect on a debt "which was originated by such person." This strongly suggests that the FDCPA would not apply to Goldman Roth's attempts to collect on debts originally owed to it, as opposed to the debts that it has purchased.

The court need not decide this issue, however, as Vaiden's argument fails on its second prong. This argument assumes that calls regarding one obligation cannot at the same time be made "in connection with the collection of" an underlying debt, but this requires a narrower reading of the phrase than 1) its plain meaning and 2) context allow. First, the phrase itself has relatively broad connotations. While the FDCPA's drafters could have used a more limited phrase such as "requests for repayment of a debt," they did not. Instead, they chose the term "connection," requiring only *some* link to repayment of the debt in question.

The FDCPA's use of the phrase in context supports the plain meaning. Section 1692c, for instance, expressly prohibits third-party communications made "in connection with the collection of any debt," except for those communications that fall within the section–1692b safe harbor because they were made for purposes of learning the consumer's location. Implicitly, then, these communications, despite being only indirectly related to actual repayment of the debt, are made "in connection with collection of [the] debt"; otherwise, there would be no need to carve out a safe harbor for them. *See Thomas v.*

*Consumer Adjustment Co., Inc.,* 579 F.Supp.2d 1290, 1297 (E.D.Mo.2008) ("If the Court were to adopt Defendant's position, it would render portions of § 1692b superfluous."); *West v. Nationwide Credit, Inc.,* 998 F.Supp. 642, 645 (W.D.N.C.1998) ("If the court were to adopt Defendant's interpretation of section 1692c(b) and construe the provision as only prohibiting third party communications in which some information about a debt is actually disclosed, section 1692b would be superfluous."). Similarly, section 1692d prohibits harassing, abusive, or oppressive behavior "in connection with the collection of a debt." 15 U.S.C. § 1692d. The section lists specific examples of prohibited behavior, including such indirect means as "[t]he publication of a list of consumers who allegedly refuse to pay debts" and "[t]he advertisement for sale of any debt to coerce payment of the debt." *Id.* § 1692d(3)-(4). Section 1692g(e) provides a negative example. It states that where a party is required by law to notify a consumer of a data-security or privacy breach, the notice "shall not be treated as an initial communication in connection with debt collection," so long as it "does not relate to the collection of a debt." 15 U.S.C. § 1692g(e). Like the uses of the term in sections 1692c and 1692d, this suggests that "in connection with" is not just limited to direct requests for repayment of a debt but instead encompasses the individual steps on the road to repayment, even where—like learning the debtor's phone number—they do not directly relate to the debt itself.

Though this court is aware of no decisions addressing this precise question, the Seventh Circuit has similarly held that section 1692c's "in connection with" language should be read to include more than just direct requests for payment. In *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380 (7th Cir.2010), the court found that a debt

collector had violated section 1692c by sending a letter "offer[ing] to discuss 'foreclosure alternatives' and ask[ing] for financial information in order to initiate that process." *Id.* at 386. The court also found that the debt collector separately violated section 1692c by asking a third party "to collect financial information from [the debtor] for the purpose of evaluating her foreclosure alternatives." *Id.* The third party's subsequent communication with the debtor constituted a third violation. *Id.* In determining whether these communications were made "in connection with" a debt, the *Gburek* court looked to a number of factors. The court noted that while an explicit demand for payment is sufficient to show such a connection, it is not necessary and in fact "is just one of several factors that come into play in [this] commonsense inquiry." *Id.* at 385. Also relevant is "[t]he nature of the parties' relationship" and "the purpose and context of the communications," including other communications made at the same time and the debt collector's "apparent purpose ... to threaten and harass the debtor into settling her debt." *Id.* at 385–86. Turning to the facts before it, the *Gburek* court emphasized the context and purpose of the communications at issue. While the initial letter did not request payment, it did offer to discuss "foreclosure alternatives" and asked for related financial information. As the court stated, this was "Litton's opening communication in an attempt to collect Gburek's defaulted home loan—by settlement or otherwise." *Id.* at 386. Similarly, the other two letters "were communications made to induce the debtor to settle a debt." *Id.* This purpose, in the court's view, was enough to establish that these communications were made "in connection with the collection of [a] debt" and bring them under the FDCPA. *Id.; see also Sparks v. Phillips & Cohen Assocs., Ltd.,* 641 F.Supp.2d 1234, 1244 (S.D.Ala. 2008) (finding phone calls to be "in connec-tion with the collection of [a] debt" where "[t]he raison d'etre of Strine's communications with plaintiffs was to secure payment of Glover's debts").

■ Here, the evidence shows a continuing connection between the Art Van Debt and Defendants' actions. Goldman Roth contacted Mrs. Russell in the first place in an attempt to collect on the allegedly unpaid Art Van Debt. Based on that call, she agreed to make payments on the debt. The connection at this point is direct and obvious: the only reason Mrs. Russell agreed to give Goldman Roth money was to pay off the Art Van Debt. Mr. Vaiden argues, however, that when Mrs. Russell's payments were rejected, a new, intermediate obligation was created, and from this point onward, Defendants' calls had to do with this debt, not the Art·Van Debt. The facts do not support this framing, however. Internally, Goldman Roth did not treat Mrs.· Russell's failed payments as a separate and distinct debt. Instead, it recorded activity regarding her payments—and the subsequent phone calls—in the Art Van Debt's account. And as Mr. Vaiden's counsel admitted at oral argument, any money received from Mrs. Russell would have been credited to the Art Van Debt. Regardless of any other obligation created by Mrs. Russell's failed payments, the connection to the Art Van Debt still holds. This court finds, therefore, that Defendant's attempts to secure payment from Mrs. Russell were made "in connection with the collection of" the Art Van Debt, and the FDCPA applies to these communications. The Court finds no questions of fact on material matters in resolving this issue.

Defendant argues in the alternative that his third-party communications did not violate § 1692c because they fell under the section–1692b safe harbor for communications made "for the purpose of acquiring

location information about the consumer." 15 U.S.C. § 1692b. This argument also fails. The evidence on record does not support the claim that Mr. Vaiden called third parties to find out Tammy or Roger Russell's location. Mr. Vaiden had already gotten in touch with Mrs. Russell by this point, and he was already aware of the Russells' location. Further, in his calls to Mr. Henning and Ms. Gelderbloom—the only calls where we have contemporary evidence of Mr. Vaiden's statements—Mr. Vaiden did not ask about Mrs. Russell's address or phone number. Instead, he simply tried to get Mrs. Russell to answer or return his calls. If Mr. Vaiden had not already known Mrs. Russell's phone number, he could perhaps argue that this information was his ultimate goal. But because he did already know her number, this evidence directly contradicts his claim that these calls were made "for the purpose of acquiring location information about the consumer." In any case, section 1692b states that a debt collector shall "not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." Mr. Vaiden undisputedly called Plaintiff Hall at least twice, and he makes no allegations that would excuse this second call. For all of these reasons, Defendant has not shown any disputed fact that would entitle him to the protection of the section–1692b safe harbor.

Finally, Defendant argues that summary judgment should be denied because "material questions of fact remain as to what transpired during the calls at issue." Defendant, however, does not explain these supposed questions of fact or why they are material to this claim. This bare assertion is insufficient. To avoid summary judgment after the movant has met her burden, the opposing party must set forth specific facts in the record *demonstrating* a dispute of material fact. Fed.R.Civ.P. 56(c), (e); *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Vaiden has not done so, and so this argument will not prevent summary judgment.

For these reasons, summary judgment will be granted in favor of Plaintiffs Roger Russell and Tammy Russell on this claim.

### B. Section 1692d—Harassing, Oppressive, or Abusive Conduct

■ Plaintiffs' next claimed violation falls under section 1692d, which prohibits conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Plaintiffs argue that Defendant Vaiden's pattern of debt-collection calls to Tammy Russell, Mary Hall, and the various third parties violate this provision. In support, Plaintiffs point out that Vaiden contacted at least six third parties in connection with the debt. Vaiden allegedly threatened both Mrs. Russell and Ms. Hall repeatedly, so much so that Ms. Hall is still afraid to answer her telephone. Plaintiffs emphasize that Vaiden began calling Tammy "non-stop" after he learned that her son, Jordan, was in the hospital with a severe brain injury. This harassment, they note, succeeded in forcing Mrs. Russell to pay over $500 she did not owe on the Art Van Debt.

Defendant disputes the charge of harassing, oppressive, and abusive behavior. He points specifically to statutory subsection (5), which specifically prohibits debt collectors from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Vaiden argues that

there is no evidence of such intent here, and he points to case law suggesting that "a party's bare reliance on the number of calls made is almost always insufficient to establish a violation of the FDCPA as a matter of law." (Def.'s Br., ECF No. 73, at 8–9 (citing *Pugliese v. Prof. Recovery Serv., Inc.*, 2010 WL 2632562, *9 (E.D.Mich. Jun. 29, 2010)); *Saltzman v. I.C. Sys., Inc.*, 2009 WL 3190359, *6–7 (E.D.Mich. Sept. 30, 2009).) He argues that summary judgment is particularly unfounded where the number of calls itself is disputed, as it is here. Vaiden further argues that Jordan Russell's injury, while unfortunate, is irrelevant to this issue.

Defendant focuses too strongly on the specific behavior listed in subsection (5). As the statute makes clear, its numbered subsections are illustrative only. *See* 15 U.S.C. § 1692d (listing examples "[w]ithout limiting the general application of the foregoing"). Similarly, Defendant's *mens rea* argument is also not dispositive. The statute prohibits conduct that is harassing, oppressive, or abusive, with no specific intent required. *Id.*

Additionally, contrary to Defendant's suggestion, Plaintiff's argument does not rely simply on the bare number of calls that Vaiden made, but also on their pattern, the breadth of persons contacted, and the circumstances under which the calls were made. This, however, is quite a broad argument, based on a large number of factual claims, and Vaiden correctly points out that the parties genuinely dispute not just what was said in most of these calls, but also whether many of the alleged calls even occurred. Though the witness testimony cited by Plaintiff does "paint[ ] a vivid picture," the facts underlying much of this testimony are disputed and so cannot form the basis for summary judgment.

The undisputed facts here are that Vaiden called Tammy Russell at least several times, Mary Hall at least twice, Nicole Russell at least once, and several third parties no more than one time each. Goldman Roth's software notes what appear to be a significant number of other calls (*see* Pl.'s Br., Ex. 14), but the allegedly harassing content of these calls is in dispute, as Plaintiffs admitted at oral argument. In the end, we are left with a number of calls, made over a period of five weeks, that succeeded in convincing Tammy Russell to make a payment on the Art Van Debt. Reasonable juries could disagree on the import of these facts, depending on their views of the disputed evidence. Summary judgment is therefore not appropriate on this issue.

## C. Section 1692e—False, Deceptive, or Misleading Representations or Means

Plaintiffs next claim a violation of section 1692e, which holds that debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiffs argue that Defendant Vaiden violated this provision by claiming to Tammy Russell and Mary Hall that Defendants intended to seize the Russells' car, home, and other property to satisfy the debt. In reality, Plaintiffs argue, Defendants never intended to take any of these actions, and in fact they could not have done so, because Roger Russell had already paid off the debt and because the statute of limitations barred its enforcement in any case. Plaintiffs also argue that Mr. Vaiden misrepresented himself as a lawyer to various third parties.

Plaintiffs have presented significant testimony that, if believed, would show that Mr. Vaiden did in fact misrepresent himself, his employer, and their intended actions in his attempts to collect on the Art Van Debt. Section 1692e specifically lists as examples of forbidden actions, "[t]he false representation or implication that any

individual is an attorney," and "[t]he [false] representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages." 15 U.S.C. § 1692e(3)-(4). Much of this testimony, however, is disputed. At his deposition, Mr. Vaiden stated that he never threatened to seize the Russells' assets or garnish their accounts and that he did not represent that he was a lawyer or associated with a law firm.

Plaintiffs have also presented some contemporary evidence of Mr. Vaiden's representations. The text message that Mr. Vaiden left on Ms. Gelderbloom's phone contains a number of suggestive statements. Mr. Vaiden's use of "Goldman and Roth"[2] evokes the standard naming scheme of a law firm. His claim that he was calling "concerning some pending paperwork that's in my office that is scheduled to be filed," and his statement that he is calling regarding "File No. 2021368," are similarly suggestive, though the voicemail does not specifically claim that the caller is a lawyer. The notes taken by the Russells' neighbor, Jacques Henning, state that the caller was a "Goldman & Roth Attorney" and that he called regarding "case # 2021368." (Pl.'s Br., Ex. 9.) These notes do not purport to be direct quotes, however, so while they show that Mr. Henning understood Mr. Vaiden to be a lawyer, they do not show what that led Mr. Henning to this belief.

■ Though neither party cites it, the proper standard for determining whether a debt collector's actions have violated section 1692e is "an objective test based on the understanding of the 'least sophisticated consumer.'" *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir.

1998). This test both "protects naive consumers" and "prevents liability for bizarre or idiosyncratic interpretations" of debt-collector communications. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509–10 (6th Cir.2007) (quotation marks omitted). While Mr. Vaiden's claims to Ms. Gelderbloom come close to the line, they are not so misleading as to conclusively settle this matter. Further, this call tends to support Mr. Vaiden's testimony that he did not explicitly claim to be a lawyer in his communications (though it is certainly plausible that an unethical collector would be more circumspect in recorded messages than when speaking directly to someone). The question of what Mr. Vaiden said to Plaintiffs and third parties is therefore largely one of witness credibility—an issue for the jury, not this court. Without this evidence, the court cannot find as a matter of law that Mr. Vaiden violated section 1692e.

### D. Section 1692g—Written Notice

Under 15 U.S.C. § 1692g(a), a debt collector must, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, ... send the consumer a written notice" containing certain information about the debt. Neither Goldman Roth nor Mr. Vaiden sent such a notice in connection with the Art Van Debt. Plaintiffs claim that Defendant Vaiden is therefore liable to Roger Russell under this statute.

Defendant argues that this provision does not apply to Mr. Vaiden, because it was Goldman Roth's duty to send a § 1692g notice, not his own. He claims that "preparing or mailing letters on behalf of the company was never part of Vaiden's job duties," and in any case, it was not Vaiden but another collector, Nate

---

**2.** While this "and" may have been an artifact of the transcription, Defendant has not so claimed.

Ormsby, who made the first communication regarding the Art Van Debt. Mr. Vaiden claims that no court has extended the written-notice obligation to an individual collector (though he fails to cite any cases declining to do so), and he argues that finding such a duty "would produce bizarre and unintended results never contemplated by Congress."

Unfortunately for Defendant, the Sixth Circuit has held that an employee of a debt collector can be held personally liable under the FDCPA so long as that employee individually qualifies as a debt collector. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435–38 (6th Cir.2008). The *Kistner* court surveyed a split in authority on this issue and expressly rejected the Seventh Circuit's holding that the FDCPA incorporates a vicarious-liability principle, such as that in Title VII, such that only "the debt collection company answers for its employees' violations of the statute." *Id.* at 436 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir.2000)). Instead, the court adopted the reasoning of *Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F.Supp.2d 615 (D.Utah 2005):

> [T]he FDCPA does not limit liability to business entities or employers. Rather, under the FDCPA, liability extends to all "debt collectors," defined as "any person . . . in any business the principal purpose of which is the collection of any debts. . . ." The point of this is simply that it is much easier to read the language of Title VII and conclude that it is based upon the respondeat superior liability of the employer, especially given the remedies available under Title VII, than it is to conclude the same thing with the FDCPA.

*Id.* at 621–22.

Though *Kistner* itself does not specifically discuss its construction's applicability to section 1692g, its holding appears binding. As that court noted, the FDCPA extends civil liability to "any debt collector who fails to comply with any provision of this subchapter with respect to any person." 15 U.S.C. § 1692k(a). Like the other statutory provisions discussed above, section 1692g expressly applies to each "debt collector," not to employers only or to some other subset of this broad category. *Id.* § 1692g(a). The statute itself provides no suggestion that "debt collector" should be interpreted differently here than in other parts of the statute, and the court is aware of no case so holding.

Indeed, at least one other district court has similarly read the FDCPA to impose liability on an individual employee for a violation of section 1692g. *See Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1073–74, 1081 (E.D.Cal.2008) (finding that "Craighead regularly collect[ed] or attempt[ed] to collect . . . debts . . . ,' thereby qualifying him as a debt collector under the FDCPA and exposing him to personal liability" and holding that "Craighead is liable under § 1692g(a) based on DATS' omission of the last three requirements"). And another court has specifically acknowledged, in the course of denying a motion to dismiss, that an employee may be personally liable for a violation of section 1692g. *Gottlieb v. Green Oil, Inc.*, No. 97–cv–7313, 1998 WL 469849, *3 (S.D.Fla. May 8, 1998) ("Officers and employees of the debt collecting agency may be jointly and severally liable with the agency. . . . In the case sub judice, defendant Raynor signed the letter in question, and may be personally liable for any violation of the Act.") (citing *Teng v. Metropolitan Retail Recovery Inc.*, 851 F.Supp. 61, 67 (E.D.N.Y.1994); *West v. Costen*, 558 F.Supp. 564, 587 (W.D.Va.1983)). Defendant presents no cases in support of his contrary construction of section 1692g, and this court has found none.

While resolving this issue by reference to the authorities above, the Court notes the Federal Trade Commission's Staff Commentary on the FDCPA which concurs with this analysis. *See* 53 Fed.Reg. 50102 (Dec. 13, 1998). In discussing the definition of "debt collector" at 15 U.S.C. § 1692a(6), the Commentary explains that the term "includes ... [e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owned another." *Id.* The discussion of section 1692k's civil-liability provisions confirms that "[s]ince the employees of a debt collection agency are 'debt collectors,' they are liable for violations to the same extent as the agency." *Id.* at 50109. And the commentary regarding section 1692g similarly contemplates that employee debt collectors may themselves be obligated to provide notice under the statute. In answering the question, "Who must provide notice[?]" the commentary states that employees are relieved of this obligation if their employer satisfies the statute: "If the employer debt collection agency gives the required notice, employee debt collectors need not also provide it." *Id.* at 50108. This implicitly acknowledges that employee debt collectors would be required to provide notice if their employer failed to do so. Though this Staff Commentary is certainly nonbinding, *see Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1513 n. 4 (9th Cir.1994), it nonetheless demonstrates that Executive branch agencies have considered the issue and determined that the statute allows for individual liability.

■ Mr. Vaiden's claims that section-1692g notice was Nate Ormsby's responsibility do not save him here. Just as the FDCPA does not limit liability to the top-level debt collector in the hierarchy, neither does it limit liability to the bottom of the chain. Even if Mr. Ormsby did initiate the communication that triggered section 1692g's duty to provide notice, it is undisputed that Mr. Vaiden was at the time Mr. Ormsby's supervisor and, as admitted in his response brief, "assisted Ormsby with his efforts vis-à-vis the [Russells'] account." (Def.'s Br., ECF No. 73, at 2.) Not only was Mr. Vaiden the supervisory debt collector on the account, but he also took significant direct action in trying to collect on the Art Van Debt. Under these facts, Defendant Vaiden cannot avoid summary judgment simply by pointing to a subordinate debt collector working on the same account and claiming that sending the statutory notice was not his duty.

■ "[A]s a remedial statute, the FDCPA is liberally construed in favor of the consumer." *Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*, No. 1:04–cv–733, 2005 WL 2180481, *3 (W.D.Mich. Sept. 9, 2005) (Bell, J.) (citing *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir.2002)). Under Sixth Circuit precedent and the plain language of the statute, personal liability for violation of section 1692g only "require[s] proof that the individual is a 'debt collector.'" *Kistner*, 518 F.3d at 437–38. Defendant Vaiden does not dispute that he is in fact a "debt collector" under section 1692a(6), and so his liability is settled.

## IV. Conclusion

The undisputed facts here suggest that Defendant Vaiden was somewhat overzealous in trying to collect on the Art Van Debt. The disputed facts suggest much more. But questions of fact are left to the jury, not this court. Therefore, while Plaintiffs Tammy and Roger Russell have established that they are entitled to summary judgment on their claim that Defendant Vaiden has violated section 1692c, and while Roger Russell has established a violation of section 1692g, the court must deny summary judgment on the alleged

violations of sections 1692d and 1692e, as Defendant Vaiden has shown a genuine dispute of material fact regarding these claims.

## ORDER

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment as to Count I of their Amended Complaint (ECF No. 47) is:

A. **GRANTED IN PART** as to Roger Russell and Tammy Russell's claim under 15 U.S.C. § 1692c;

B. **GRANTED IN PART** as to Roger Russell's claim under 15 U.S.C. § 1692g; and

C. **DENIED IN PART** as to Plaintiffs' claims under 15 U.S.C. §§ 1692d and 1692e.

**IT IS SO ORDERED.**