Tazena **KENNEDY,** etc., Plaintiff,

v.

**COMPUCREDIT HOLDINGS CORPORATION, et al.,**
Defendants.

Case No. 3:12–cv–1128–J–25 PDB.

United States District Court,
M.D. Florida,
Jacksonville Division.

Signed March 31, 2014.

Aaron D. Radbil, James L. Davidson, Michael L. Greenwald, Greenwald Davidson, PLLC, Boca Raton, FL, for Plaintiff.

Brian P. O'Meara, David L. Hartsell, McGuire Woods, LLP, Chicago, IL, Emily Yandle Rottmann, Robert Eric Bilik, McGuire Woods, LLP, Jacksonville, FL, Jeffrey S. York, McGlinchey Stafford, PLLC, Jacksonville, FL, for Defendants.

## ORDER

HENRY LEE ADAMS, JR., District Judge.

This Cause is before the Court upon Defendants'[1] Motion to Dismiss (Dkt. 46).

### Background

Plaintiff Kennedy failed to pay $561.25 in consumer debt. Her account was charged off and sold to Defendant Jefferson Capital Systems, LLC (Jefferson Capital). On October 24, 2011, Jefferson Capital sent Plaintiff a letter (Offer Letter) giving her the opportunity to pay down the debt while at the same time qualifying for a new credit card through its Fresh Start Solution Program (Program). This workout plan allows a consumer to pay down debt for a discounted amount and potentially qualify for an unsecured credit card through Mid America Bank and Trust Company (Mid America Bank or Bank). The card is subject to a Bank Credit Card Agreement (Credit Card Agreement).

According to Plaintiff, "at the time of the October 2011 Offer Letter, Plaintiff's alleged debt was indisputably time-barred in Florida and could not be collected in a court of law. Nonetheless, the Offer Letter advised Plaintiff that to participate in the Program, she had to pay at least

---

1. To streamline this Order, the Court will often refer to both Defendants as the Defendant. The Complaint alleges that Jefferson Capital Systems, LLC is a wholly owned subsidiary of CompuCredit Holdings Corporation.

$184.00 within eight months. If Plaintiff had made all of the requisite payments, she would have qualified for a credit card with a $250 limit,[2] and the remainder of the alleged debt (minus the debt reduction credit) would be transferred to the new card. Thus, once the stale debt was transferred to the card, Plaintiff would have $42.00 in credit available, at a 19.99 percent interest rate.

Notably, the Offer Letter advised Plaintiff that if she requested validation of her alleged debt pursuant to federal law, she would be ineligible for the Program, debt reduction credit, and credit card. Unbeknownst to Plaintiff, at the time she received the Offer Letter, Defendants could not have validated Plaintiff's debt and did not have any documentation from the original creditor. That is, Defendants threatened to withhold the benefits of the Program, such as a partial waiver of the debt, if Plaintiff exercised her validation rights under federal law, while knowing that they would be unable [to] validate the debt if Plaintiff disputed its validity" (record citations omitted).

Plaintiff enrolled in the Program and made four monthly payments. Defendants removed her from the Program when she stopped making payments.

Plaintiff's Complaint before the Court is a putative class action lawsuit which alleges that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA) and the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* (CROA) by making false, misleading, or deceptive representations and failing to make certain disclosures.

Defendants initially moved to dismiss and/or compel arbitration. The Court found that Plaintiff was not bound by the cited arbitration provision because it was contained in the Credit Card Agreement which addressed a card that she never qualified for, much less received. (Dkt. 32)

Defendant's Rule 12(b)(6) motion to dismiss is now ripe for consideration.

**Standard** [3]

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). The Court is restricted to consideration of the facts alleged in the complaint itself. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). Further, the facts set forth in the complaint must be viewed in the light most favorable to the plaintiff. *Quality Foods De Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983).

*Fair Debt Collection Practices Act*

As articulated by the Eleventh Circuit in *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1190 (11th Cir.2010):

> In enacting the FDCPA, Congress sought "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *Brown v. Budget Rent–A–Car Syss., Inc.,* 119 F.3d 922, 924 (11th Cir.1997) (per curiam). Accordingly, the FDCPA prohibits debt collectors from using "any

**2.** The Credit Card Agreement states, "You my (sic) not request an increase in your Credit Limit ..." (Dkt. 1–2, p. 1)

**3.** Many internal citations and quotation marks will be omitted in this Order.

false, deceptive, or misleading representation or means in connection with the collection of any debt" as well as the use of "unfair or unconscionable" means of collection. 15 U.S.C. §§ 1692(e) and 1692f. The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute. See 15 U.S.C. § 1692k; *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010). Available remedies under the FDCPA include actual damages, the potential for additional damages up to $1,000 subject to the Court's discretion, and reasonable costs and attorney's fees. 15 U.S.C. § 1692k(a)(1)-(3).

*Credit Repair Organizations Act*

The term "credit repair organization"—

(A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—

(i) improving any consumer's credit record, credit history, or credit rating; or

(ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (I) . . .

15 U.S.C. § 1679a(3).

**Analysis**

■ As a threshold matter, Defendants maintain that the Court should dismiss CompuCredit as a defendant because the vast majority of allegations reference only its subsidiary Jefferson Capital and a subsidiary's status as a debt collector does not automatically make a parent company also a debt collector.

Plaintiff responds that the two defendants acted jointly to collect the relevant debt and the Complaint properly alleges that CompuCredit is a debt collector. Plaintiff also points out that CompuCredit attempted to compel arbitration in this case.

The cases cited by Defendant to support its argument that CompuCredit is not a proper party are not on point. The Defendant mostly references cases addressing shareholder and employee liability such as *White v. Goodman,* 200 F.3d 1016, 1019 (7th Cir.2000) ("The Fair Debt Collection Practices Act is not aimed at the shareholders of debt collectors operating in the corporate form . . .") Even if Defendant cited on point case law, this determination cannot be made at this stage in the proceedings.

Because Plaintiffs have alleged that both Defendants are debt collectors, and because Defendants fail to cite on point case law that supports their position to the contrary, the Court will not dismiss CompuCredit at this point in the proceedings. *Count One*—in writing requirement regarding disputed debts

Count I of the Complaint alleges that Defendants violated 15 U.S.C. § 1692g(a) by failing to accurately notify consumers of their validation rights under the FDCPA. This Section reads:

(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector **in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's **written request** within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added)

Thus, Sections 1692g(a)(4) and (5) impose an "in writing" requirement but Section 1692g(a)(3) does not.

Defendant's validation of debt notice contained in its Offer Letter generally tracks the language of the statute. It states as follows:

> Federal law gives you 30 days after you receive this letter to dispute the validity of this debt or any part of it. If you do not dispute this debt or any part of it within the same 30–day period, we will assume that the debt is valid. If you do dispute this debt or any part of it (by notifying us **in writing** within the same 30–day period), then we will, as required by law, obtain and mail you proof of the debt. If (within the same 30–day period) you request (**in writing**) the name and address of your original creditor (where your original creditor is different

than your current creditor), then we will furnish you with that information too.

(emphasis added) (Dkt. 1, Exhibit A, p. 3)

■ Defendant asserts that nothing in this paragraph states that a debtor may not dispute a debt orally. Defendant is technically correct. However, Plaintiff persuasively argues that the phrase "[i]f you do dispute this debt or any part of it" with, in parentheses, "by notifying us in writing within the same 30–day period" conveys to the least-sophisticated consumer that the only way to legitimately dispute the alleged debt is to do so in writing. Plaintiff also asserts that the use of parentheses is *per se* confusing because it is unclear whether the information contained in the parenthetical is binding or merely suggestive.

None of the cases cited by either side on this issue are entirely on point. Given the least sophisticated consumer standard, the fact the paragraph is at least potentially confusing, and the stage of this litigation, the Court is unwilling to dismiss this Count now.

*Count II*—rights disclosure

■ Count II of the Complaint alleges that Defendants violated 15 U.S.C. § 1692g(b)5 which provides, "Any collection activities and communication during the 30–day [validation] period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

Plaintiff points out that Defendants' Offer Letter contains the following provision:

> "If you take any steps to exercise any of the above-described [debt validation] rights within the 30–day period for dispute that begins with your receipt of this letter, then (I) the Program will no longer be available to you, (ii) your

choice to participate, if any, will be cancelled ... "

(Dkt. 1, Exhibit A, p. 3)

Plaintiff maintains this provision "overshadows" the notice provisions required by the FDCPA because Defendant conditions Program participation on a consumer's waiver of rights to dispute the validity of the relevant debt.

Defendant asserts that the Offer is based upon the expectation that the debt is valid and that the Program cannot be offered if the debt is disputed. Specifically, Defendant maintains that "if the debt is disputed, then there can be no meeting of the minds to proceed, and the offer necessarily must terminate ... "

The Court does not completely understand Defendant's position. Regardless, this fact based determination is not appropriate for consideration at the motion to dismiss stage.

*Count III*—ability to sue to collect Program balance

■ Counts III, IV, and V of the Complaint allege that Defendants made false representations and employed deceptive means to attempt to collect debts, in violation of 15 U.S.C. § 1692e(10) which reads:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

As to Count III, Plaintiffs allege that Defendants' promise that they, their successors, assigns and bank partners, will never "sue to collect a Program balance,"[4] is illusory because the consumer's Program balance only exists during the interim period between the consumer's agreement to participate in the Program and the bank's issuance of the credit card account to which the balance is transferred.

After the balance is transferred, the Credit Card Agreement controls and this document includes a "no waiver of [legal] rights" provision (Exhibit B to Dkt. 1, p. 3) as well as a provision that allows the bank to unilaterally change the agreement's terms after 12 months (*Id.* at p. 2). Stated differently, Plaintiff complains that the promise not to sue is made by a third party and is not applicable after the relevant credit card is received.

Defendant argues that the bank's ability to change the credit card's terms applies only to new transactions and not to the "old" transferred Program balance.

Regardless, it appears[5] that the two documents may conflict; unlike the Offer letter, the Credit Card Agreement does not specifically exclude the right to sue on Program balances from its no waiver provision.[6] This inconsistency is sufficient to proceed on this Count.

*Count IV*—Statute of Limitations

■ Next, Plaintiff complains that the Offer Letter's language related to the rele-

---

**4.** It is not entirely clear whether Mid America Bank is subject to the promises and terms contained in any document except the Credit Card Agreement.

**5.** Any future document exhibits should have the typeface enlarged to 12 point font or

greater. Dkt. 1–2, for example, is quite difficult to read as filed.

**6.** The Court is less convinced that the change in terms provision is relevant. If it were, every promise or term contained in the Credit Card Agreement is arguably illusory.

vant debt's statute of limitations is deceptive because participation in the Program may extend the statute and, further, the letter portrays the statute as being complex thereby discouraging a consumer from researching whether the relevant debt is legally time barred.

Specifically, Plaintiff cites the following paragraph: "Whether a debt is time barred is a legal determination which requires consideration of a number of factors, including, but not limited to, knowing which statute of limitations applies, knowing whether the statute of limitations has been tolled or revived, and knowing whether any previous conduct between the consumer and the creditor has altered the underlying agreement that created the debt." (Dkt. 1, Exhibit A, p. 3)

Plaintiff maintains that before mailing the Offer Letter, Defendants have actual knowledge of what limitations period applies to each individual account solicited for participation in the Program, as well as whether or not the applicable limitations period has expired. Plaintiffs argue that Defendants effectively discourage consumers from attempting to discover whether their debt is, in fact, time-barred.

Regardless, this issue is fact intensive and clearly cannot be resolved at the Motion to Dismiss stage.

*Count V*—Negative Reporting

Next, Plaintiff complains that the Offer Letter is deceptive regarding credit reporting. The Offer Letter states, in pertinent part: "[The credit card issuer Mid America Bank] will not report negative information, such as late payments, missed payments, or other defaults to credit reporting agencies." (*Id.* at p. 3)

In contrast, the actual Credit Card Agreement states: "A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations." Plaintiff again points out that the Credit Card Agreement may be unilaterally modified under certain circumstances and it states that it "controls the use of [the] . . . credit card account" after the balance is transferred. (Dkt. 1, Ex. B, p. 2) Thus, Plaintiff avers that the documents' conflicting statements about credit reporting as well as the Bank's unilateral ability to change the terms of the Credit Card Agreement violate the FDCPA.

Defendant asserts that the Offer Letter's terms are incorporated into the Credit Card Agreement. Thus, Defendant contends that the Offer Letter sets forth what the bank *will* do (not report negative information regarding the transferred balance) vs. what it *may* due under law (report any negative information).

Leaving the issue of the Change of Terms and No Waiver provisions aside, the Court finds that the reporting provisions in the two documents conflict; the Credit Card Agreement does not specifically exclude Program balances from negative reporting. At this stage in the proceedings, the Court will not find that the least sophisticated consumer is expected to know that the Credit Card Agreement's statement that it may submit negative reports if the consumer "fails to fulfill the terms of your credit obligations" does not apply to payments made towards transferred balances under the Program.

*Count VI*—Catch all

This Count is brought under 15 U.S.C. § 1692(f) which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." As stated by Defendant, this Count is essentially a restatement of many of the Complaint's other Counts.

Plaintiff asserts that the Offer is unfair or unconscionable because it provides the

"false prospect of meaningful credit access and credit rehabilitation (and a "Fresh Start") into participating in a program that subjects them to otherwise time-barred legal action and otherwise time-barred negative credit reporting (and simultaneously communicating a false sense of security)—while discouraging the least-sophisticated consumer from investigating and understanding her legal rights. Moreover, Defendants' solicitations are unconscionable in light of the numerous false and misleading representations.... Further, by reserving their unilateral right to change the terms and conditions of the credit card and Program after 12 months, Defendants have rendered all of their representations illusory and unenforceable, all to the detriment of the least-sophisticated consumer who is enticed to make payments on a debt known by Defendants to be uncollectible in a court of law.... Finally, it is unconscionable to affirmatively represent that (it complies with the FDCPA)."

Because the Plaintiff has sufficiently pled multiple counts under the FDCPA, the Court will not dismiss Count VI.

*Counts VII–X*—Credit Repair Organization Act (CROA) Counts

Defendants maintain all three Counts filed under the CROA should be dismissed because they do not fall within the definition of a Credit Repair Organization.

As already discussed, Defendants are credit repair organizations if they (1) used any instrumentality of interstate commerce, or the mails, to (2) sell, provide, or perform (or represent that they could do so) (3) in return for valuable consideration (4) services or advice about services (5) for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating.

Defendants argue that they do not provide a service, there is no charge imposed for the Program, the Offer is not adver-

tised to improve a consumer's credit record and the Offer Letter specifically denies that it is offering a credit repair program.

Of course, the fact that Defendants disclaim Plaintiff's assertion that they are credit repair organizations is not dispositive. Further, Plaintiff has alleged that "the overall net impression conveyed by Defendants' Offer Letter and marketing material is that participation in the Program will provide a 'Fresh Start' to improve any consumer's credit record, credit history, or credit rating." Plaintiff also maintains that the monies paid to participate in the Program—payments on an uncollectible debt—qualify as fees.

The Court agrees with Plaintiff that she has plausibly alleged that Defendants qualify as Credit Repair Organizations and, further, the actual determination on this point is fact-intensive and not suitable for the motion to dismiss stage.

## Conclusion

Most of Defendants' arguments are premature at this stage in the litigation. Further, the Court agrees with Plaintiff that she has sufficiently alleged all Counts in the Complaint. Thus, it is **ORDERED:**

Defendants' Motion to Dismiss (Dkt. 46) is **DENIED.**