In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2811

ANDREW SCHLAF, on behalf of
plaintiffs and a class, et al.,

*Plaintiffs-Appellants*,

*v.*

SAFEGUARD PROPERTY, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:15-cv-50113 — **Frederick J. Kapala**, *Judge*.

ARGUED FEBRUARY 21, 2018 — DECIDED AUGUST 10, 2018

Before RIPPLE, KANNE, and HAMILTON, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Andrew and Wendy Schlaf brought
this action against Safeguard Property, LLC, alleging viola-
tions of the Fair Debt Collection Practices Act ("FDCPA").
Specifically, they claim that Safeguard is a debt collector un-
der the statute and failed to comply with various obligations
imposed on debt collectors under the statute. The parties
filed cross-motions for summary judgment. The district

court ruled that Safeguard is not a "debt collector" under the FDCPA and therefore granted summary judgment to Safeguard. Because Safeguard's actions were too attenuated from Green Tree's own debt-collection efforts, we hold that the district court was correct to conclude that Safeguard is not a debt collector. We therefore affirm its judgment.

# I

# BACKGROUND

## A.

Andrew and Wendy Schlaf own property in Illinois. The property is subject to an FHA-insured mortgage serviced by Green Tree Servicing, LLC.[1] The Schlafs defaulted on the mortgage, and Green Tree was unsuccessful in its initial attempts to contact them about the delinquent payments and late fees.

Green Tree contracts with Safeguard, a "mortgage field servicing company,"[2] to perform a variety of services on properties with defaulted mortgages, including lawn maintenance and winterizing services. The relationship between Green Tree and Safeguard is governed by a Master Property Services Agreement.[3] Exhibit A to the Agreement describes the various property preservation services that Safeguard will perform for Green Tree when Green Tree

---

[1] Green Tree is now known as Ditech Financial LLC.

[2] R.107 at 1.

[3] *See* R.97 at 24–65.

places an order; these include a variety of property inspections, lock changes, pool maintenance, and utility management.[4] Most relevant here, Green Tree arranged with Safeguard to assist Green Tree in complying with certain Department of Housing and Urban Development ("HUD") regulations to which any of its properties with FHA-insured mortgages are subject (including the Schlafs' mortgage). As relevant here, the regulations require Green Tree to inspect those properties for occupancy:

> When a mortgage is in default because a payment was not received within 45 calendar days of the due date of the missed payment, and efforts to reach the mortgagor by telephone or correspondence have proven unsuccessful, the mortgagee must make an inspection to determine if the property is vacant or abandoned.[5]

To comply with the HUD inspection obligation, Green Tree contracted with Safeguard to perform "contact attempt inspection[s]" on the properties.[6] Green Tree's "servicing system" automatically placed an order for a contact attempt inspection when an account was "45 or more days past due" and "efforts to reach the mortgagor by telephone or correspondence have proven unsuccessful."[7] The inspection order

---

[4] *See id.* at 50–56.

[5] *Id.* at 77.

[6] R.84 at 2.

[7] R.97 at 5. According to Daniel Van Keuren, Green Tree's Director of Default Services, the servicing system runs a "nightly batch process" to

(continued)

was sent automatically to Safeguard "through [a] system that is built between [Green Tree] and Safeguard."[8] The results of the inspection were then sent back to Green Tree through the same automated system.

During the contact attempt inspections, a Safeguard representative visited the property to determine its occupancy status and placed a door hanger on an outside doorknob of the property. The door hanger it placed for Green Tree contained a piece of paper that gave instructions in English and Spanish for the property owner to contact Green Tree:

**IMPORTANT**

...

**PLEASE CALL**

...

GREEN TREE
800-666-1143

...

*PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER*

...

---

flag the delinquent accounts that require contact attempt inspections. *Id.* Consistent with the HUD guidelines, the system flags a property for inspection when it is "45 days past due and every 30 days thereafter while it remains delinquent." *Id.* Borrowers with occupied properties are automatically filtered out of the inspection order list if they have made contact with Green Tree in the last thirty days. *Id.* The system also can automatically order other types of services. For example, if the property is in a city that requires Green Tree to register properties in foreclosure, the servicing system will automatically order Safeguard to process the registration. *Id.* at 7–8.

[8] *Id.* at 6.

*WE ARE EXPECTING YOUR CALL TODAY.*[9]

The phone number listed on the door hanger was Green Tree's phone number. The door hanger did not identify Safeguard in any way.

Safeguard's representatives verified occupancy for Green Tree by visually inspecting the property for indicators such as "whether grass is cut, personal property is visible, glass is intact and utilities are on."[10] The door hanger was to be left only after the Safeguard representative verified through such an inspection that the property was occupied. Further, Safeguard representatives were instructed to leave the door hanger even if they spoke personally to the homeowner while conducting the inspection. However, they were not to identify themselves as Safeguard representatives if they encountered the homeowners or others on the property and were instructed "to avoid talking about why they are on the property."[11]

Safeguard admits that contact attempt inspections are performed "because HUD guidelines require them to be performed when a mortgage is in default."[12] It maintains that the purpose of the inspection, as required by the guidelines, is "to determine if a property is being maintained and

---

[9] R.81-1 at 14.

[10] R.101 at 8.

[11] *Id.* at 5.

[12] *Id.* at 3.

whether it is occupied."[13] However, Safeguard acknowledges that "one of the purposes of leaving the door hanger is to attempt to contact the mortgagor in an effort to have the mortgagor … contact the client."[14]

When Green Tree was unsuccessful in its initial attempts to contact the Schlafs about their delinquent payments, it arranged with Safeguard to perform a series of contact attempt inspections at the Schlafs' property.[15] During each of the inspections,[16] a Safeguard representative left Green Tree's door hanger on the Schlafs' door. On at least one occasion, Mr. Schlaf encountered the Safeguard representative while the representative was hanging the door hanger. Mr. Schlaf testified that the representative did not identify himself as being employed with Safeguard or with any company and that the representative told Mr. Schlaf he was "[j]ust doing [his] job."[17] On other occasions, Mr. Schlaf encountered the

---

[13] *Id.*

[14] *Id.* at 2.

[15] Mr. Schlaf testified that he first communicated with Green Tree in May 2014 to attempt to "take[] care of" "a past due amount." R.81-3 at 8. He received a letter from Green Tree notifying him that he had missed a monthly payment on November 5, 2014, *id.* at 56, and an official Notice of Default on November 17, 2014, *id.* at 57.

[16] From our review of the record, it appears that Safeguard performed ten inspections in total at the Schlafs' property, beginning on November 20, 2014, and continuing monthly until September 11, 2015, with no inspection occurring in December 2014. R.97 at 87–117 (monthly work orders).

[17] R.84-1 at 21.

Safeguard representatives as they were leaving his property, and he was unable to identify them or speak with them.

Mr. Schlaf called the number on the door hanger at least once and testified that it "took [him] right to Green Tree."[18] He testified that, to his knowledge, Safeguard is "property preservation," and he did not know if Safeguard collected debt.[19] Further, he testified that he never "receive[d] anything" or "ha[d] a conversation with anybody from Safeguard Properties attempting to collect" on the delinquent mortgage debt.[20]

## B.

The Schlafs filed this action[21] on May 14, 2015, alleging that Safeguard had violated the FDCPA by not including certain disclosures on the door hangers. Specifically, they alleged that Safeguard had failed to comply with the initial

---

[18] *Id.* at 20.

[19] *Id.* at 15.

[20] *Id.*

[21] The Schlafs originally filed this action as a class action and moved for class certification shortly after they filed their complaint. *See* R.4. They later filed a motion to continue their motion for class certification "until the Court sets an initial status hearing." R.10 at 2. The district court denied the Schlafs' motion to continue because they had not "request[ed] a briefing schedule on [it] or contemplate[d] proceeding on it at this time" and ordered that the motion for class certification be "stricken with leave to refile when they are prepared to proceed." R.16. It does not appear that the Schlafs ever refiled their motion for class certification.

disclosure requirements of 15 U.S.C. § 1692g. Section 1692g requires debt collectors, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," to disclose certain details about the debt, such as the name of the creditor, the amount owed, and that the debtor has the right to dispute the debt. The Schlafs also alleged that Safeguard had violated 15 U.S.C. § 1692e(11), which requires debt collectors to disclose in their initial communications that they are communicating with the debtor in an attempt to collect a debt and that any information they obtain will be used for that purpose.

Safeguard moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), contending that it is not a "debt collector" within the meaning of the FDCPA and, therefore, is not subject to the disclosure requirements of the statute. The district court denied Safeguard's motion to dismiss; it ruled that the Schlafs had pleaded sufficient facts to state a claim that Safeguard was a debt collector.

The case proceeded through discovery, and the parties filed cross-motions for summary judgment. Safeguard renewed its argument that it is not a debt collector, and the Schlafs contended that the undisputed facts proved both that Safeguard was a debt collector and that the door hangers violated the FDCPA. Based on the record evidence, the district court held that Safeguard is not a debt collector and therefore not subject to the FDCPA's disclosure requirements.

In explaining its ruling, the district court noted that an entity can be a debt collector under the FDCPA under either

the "principal purpose" definition or the "regularly collects" definition.[22] Under the "principal purpose" definition, an entity is a debt collector if it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). Under the "regularly collects" definition, an entity is a debt collector if it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* The district court held that Safeguard is not a debt collector under either definition.

First, the district court held that Safeguard is not a debt collector under the principal purpose definition because Safeguard performs "numerous other services to Green Tree such as grass cutting, winterizing pipes and utilities, and providing security and a lockbox."[23] Therefore, Safeguard's "principal purpose" is not debt collection.

As to whether Safeguard "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," *id.*, the district court held that Safeguard's role in Green Tree's debt-collection process was too remote and incidental even to be considered "indirect" debt collection. The district court emphasized that the Safeguard representative did not make any contact with the Schlafs other than to deliver the door hanger and did not communicate with the Schlafs about their debt. In fact, the Safeguard representatives were given no information about

---

[22] R.107 at 3.

[23] *Id.* at 5.

the Schlafs' debt. The court likened Safeguard's role to that of a "messenger."[24] The court noted that the door hangers did not identify Safeguard in any way and that Safeguard's compensation from Green Tree in no way depended on whether the Schlafs repaid their debt.

Because the district court concluded that Safeguard is not a debt collector and thus not subject to the strictures of the FDCPA, the district court granted Safeguard's motion for summary judgment and denied that of the Schlafs.

## II

## DISCUSSION

The Schlafs now appeal the district court's grant of summary judgment to Safeguard. They contend that the district court erred in interpreting the FDCPA to exclude entities like Safeguard from its definition of "debt collector." For the reasons stated in the following discussion, we agree with the district court that Safeguard is not a debt collector and therefore affirm its judgment.

## A.

Our review of the district court's summary judgment decision is de novo. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998). Summary judgment is appropriate only if there are no disputed questions of material fact and

---

[24] *Id.* at 8.

the moving party is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). "With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Hendricks-Robinson*, 154 F.3d at 692. "Thus, we examine the record in the light most favorable to the [Schlafs], granting them the benefit of all reasonable inferences that may be drawn from the evidence and reversing if we find a genuine issue concerning any fact that might affect the outcome of the case." *Id.*

The task before us is twofold. First, we must interpret the language of the statute; secondly, we must determine whether the statute is applicable to Safeguard's activity.

The first task is one of statutory construction. We must interpret the plain language of the statute in light of its placement in the overall text of the statute. *See Univ. of Chi. v. United States*, 547 F.3d 773, 777 (7th Cir. 2008). Here, the language of the FDCPA tells us explicitly and succinctly that the statute's principal purpose is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e) ("Congressional findings and declaration of purpose").[25] Indeed, we already have acknowledged specifically that purpose: "The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection prac-

---

[25] Section 1692(e) reads in full: "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

tices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997). Broadly, it prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA further limits the practices of debt collectors in more specific ways, such as regulating debt collectors' communications with consumers, *id.* § 1692c, prohibiting specific forms of harassment and abuse, *id.* § 1692d, defining certain conduct as per se "unfair or unconscionable," *id.* § 1692f, and requiring certain disclosures by debt collectors to consumers about the debt being collected, *id.* § 1692g.

The protections of the statute are, however, subject to two limitations. First, the statute's substantive provisions apply only to debt collectors. *E.g.*, 15 U.S.C. §§ 1692b, 1692c. Creditors are therefore not subject to the FDCPA as long as they are collecting their own debt in their own name and their "principal purpose" as an entity is not debt collection. *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998); *see also* 15 U.S.C. § 1692a(4).[26] Second, the statute applies on-

---

[26] The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed," excluding "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). The Supreme Court has clarified recently that even parties who "regularly purchase debts originated by someone else and then seek to collect those debts for their own account" are not debt collectors under the FDCPA because they are not collecting debts

(continued)

ly to communications made "in connection with the collection of any debt." *E.g.*, 15 U.S.C. § 1692c(a). Persons seeking the protections of the FDCPA therefore must satisfy these two threshold criteria. *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Here, the Schlafs and Safeguard dispute only the first limitation: whether Safeguard is a debt collector.

The plain language of the statute provides a formidable anchor for our analysis. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or who *regularly collects or attempts to collect*, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphases added). Indeed, we have recognized that § 1692a(6) establishes two categories of debt collectors: (1) those whose "principal purpose … is the collection of any debts," and (2) those who "regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *McCready v. eBay, Inc.*, 453 F.3d 882, 888–89 (7th Cir. 2006). Here, the parties appropriately focus on whether Safeguard's contact attempt inspections are "indirect" debt collection services under the second prong.

Limiting our analysis to the language of the statute, we cannot say that Safeguard engages in indirect debt collection simply by leaving a door hanger that asks the homeowner to

---

owed another. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).

call Green Tree. In a very broad, theoretical sense, it is possible to characterize facilitating the reestablishment of communication between the homeowner and Green Tree as a preliminary step in Green Tree's *own* debt-collection process. It is difficult to say, however, that such specific and very limited action even indirectly implicates the specific statutory concerns set forth in the statute's language. The FDCPA treats creditors and debt collectors differently precisely because creditors have an "ongoing relationship with the debtor" and thus have "incentive to engender good will by treating the debtor with honesty and respect." *Ruth v. Triumph P'ships*, 577 F.3d 790, 797 (7th Cir. 2009). Here, the outward appearance of the inspection gives every indication that it is coming from Green Tree. The door hanger does not identify Safeguard in any way, and the phone number connects the homeowner directly to Green Tree. Safeguard does not discuss the debt with the homeowners and has no other contact with the homeowners other than to leave the door hanger. The door hanger itself does not give any details about the homeowners' debt or demand payment. The district court's characterization of Safeguard's role as more akin to that of a messenger than as an indirect facilitator of debt collection was therefore apt.

Our conclusion that Safeguard is not an indirect debt collector is consistent with our interpretation of a separate, threshold requirement repeated throughout the FDCPA: that the communication being challenged was made "in connection with" debt collection. Whether a communication was sent "in connection with the collection of any debt" is an objective question of fact. *Ruth*, 577 F.3d at 798. We therefore have not established a "bright-line rule" for determining whether a communication was made in connection with

debt collection; rather, we have described it as a "commonsense inquiry" consisting of several factors, none of which is dispositive. *Gburek*, 614 F.3d at 384–85. Whether the communication includes a "demand for payment" is one such factor. *Id.* at 385. Another factor is the "nature of the parties' relationship"; specifically, whether the relationship arose only out of the defaulted debt. *Id.* Finally, we consider "the purpose and context of the communication[]," judged by an objective standard. *Id.* For example, a communication that is sent in the same setting as a collection notice or made "to threaten and harass the debtor into settling her debt" or "to encourage [the debtor] to contact [the creditor] to discuss debt-settlement options" is more likely to be made in connection with debt collection. *Id.* at 386.

Here, the door hangers contain no demand for payment and, indeed, make no reference to the Schlafs' debt whatsoever, other than to give Green Tree's name and phone number. The relationship between Safeguard and the Schlafs "arose out of … the plaintiffs' defaulted debt," *id.* at 385 (quoting *Ruth*, 577 F.3d at 799), only in the sense that Safeguard performs contact attempt inspections only at properties where mortgagors have defaulted on their payments. The door hangers contain no offers of debt settlement or repayment options, and Safeguard leaves the door hanger to encourage, on behalf of Green Tree, the owner to contact Green Tree.[27] However, given that the door hangers are left

---

[27] Safeguard submits on appeal that "the purpose of the phone number on the door hanger is so that the mortgagor can call in if they have a question as to why the inspection was performed." Appellee's Br. 13. This purported purpose is belied by the door hanger, which makes no

(continued)

as part of an occupancy inspection and not left in the context of a collection letter or notice of default, the door hangers are left in connection with property preservation, not debt collection.

Congress's use of the terms "directly or indirectly" certainly evinces an intent that the statute cover a wide range of activity that is inimical to the purpose of the statute. At the same time, however, the context in which those terms are employed does indicate that there are some limitations to the statute's reach and to what activity constitutes "indirect" debt collection. The entity at issue must "collect[] or attempt[] to collect … debts." 15 U.S.C. § 1692a(6). Here, Safeguard had no part in the collection or attempted collection of a debt. Indeed, we believe that our work to date, as well as that of our sister circuits, evinces an understanding that only activity that implicates the concerns set out in the statute ought to be considered indirect debt collection. We have

---

mention that an inspection even was performed. *See* R.81-1 at 14. A homeowner reading the door hanger would have no way of knowing from the door hanger that anybody performed an inspection at his property, let alone that he should call Green Tree for the purpose of finding out why such an inspection had been performed.

The Schlafs contend that the purpose of the door hanger is a disputed fact that precludes summary judgment. However, taking the facts in the light most favorable to the Schlafs, as we must, we note that Safeguard admits elsewhere in the record evidence that one purpose of the door hanger is "to attempt to contact the mortgagor in an effort to have the mortgagor … contact the client." R.101 at 2. Therefore, the purpose of the door hanger is not a disputed fact. Moreover, it is not material. As we discussed above, even assuming that this is the purpose of leaving the door hanger, Safeguard is not a debt collector.

acknowledged, for instance, that an entity can be an agent of a debt owner in the most technical sense but not be a debt collector if it performs only "ministerial duties" that aid in the collection of debt, such as "stuffing and printing" letters. *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000). Our work in interpreting the FDCPA and its purpose in other contexts establishes that the FDCPA is aimed at curbing abuses by third-party debt-collection agents who are much more involved in actual debt collection than Safeguard, whose primary purpose is property preservation. Although *White* involved other questions of statutory interpretation under the FDCPA, its application of the FDCPA is instructive. It applied the statute to a third-party service that obtained a list of debtors from its client, the creditor, as well as sent letters to the debtors demanding payment and threatened future collection efforts. *Id.* at 1018. The third-party agency had discretion to determine that certain debtors were "futile" to contact (such as if they were in bankruptcy). *Id.* Further, if the letters were unsuccessful, the third-party agency had discretion "to decide what additional efforts, if any, to make to collect the debt." *Id.* at 1019. The third-party agency received thirty-five percent of any money paid to the creditor by debtors it contacted. *Id.* There was no doubt that, given the close relationship of the third party's activities to debt collection, the third-party agency was engaged in debt collection on behalf of the creditor.

Safeguard's actions on behalf of Green Tree, by contrast, do not rise to the level of the debt-collection efforts we described in *White*. Green Tree's servicing system automatically generates a list of properties on which it orders Safeguard to perform contact attempt inspections and gives Safeguard no other information about the debts associated with those

properties. Safeguard does not have discretion to evaluate the likelihood of repayment and then focus its efforts on the mortgagors most likely to make payment to Green Tree; rather, Safeguard must perform the inspections on *all* properties on which the inspection is ordered. Safeguard makes no attempt to collect payments from the mortgagors and, in fact, instructs its representatives *not* to discuss the reason for its visit with any mortgagors it encounters.[28] Further, there is no evidence that Safeguard is compensated based on the number of mortgagors who contact Green Tree after the contact attempt inspection or begin to repay their debt to Green Tree.

The decisions of our colleagues in the Third and Ninth Circuits also provide a significant and helpful contrast to the present case. In *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir. 1998), the Ninth Circuit held that Western Union was a debt collector when it advertised "Talking Telegrams" that would aid collection agencies in reaching debtors for whom they had been unable to obtain telephone numbers. *Id.* at 1144. Specifically, Western Union would deliver a "Talking Telegram" to the debtor's address, instructing the debtor that Western Union had a telegram that it could not deliver because it did not have the debtor's

---

[28] Notably, the Master Property Services Agreement provides that "Safeguard will neither demand nor accept any cash, check, money order, or any other form of payment or consideration, including rent, from any person. If contact is made with an occupant or third party, it is Safeguard's policy not to discuss, mention, or allude to the mortgagor's loan or the mortgagor's delinquency or default with the occupant, the mortgagor, or any third party." R.97 at 51.

phone number and that the debtor should call Western Union immediately. *Id.* When the debtor called Western Union, his phone number was captured by Western Union's caller ID system, and the operator also manually recorded the debtor's name, address, and phone number, all of which it transmitted to the collection agency. *Id.* Western Union also transmitted the "Talking Telegram," which the court described as a "debt collection message," and followed up with a mailed written telegram. *Id.*

The Ninth Circuit concluded that Western Union's efforts could amount to indirect debt collection under § 1692a(6). The court noted that Western Union advertised its Talking Telegram services as "specially developed for the credit and collections industry." *Id.* at 1147. Further, the court noted that the "dual role of the service is to (1) retrieve unavailable telephone numbers for creditors and debt collection agencies; and (2) to catalyze debt collection activity through telegrams bearing the Western Union name." *Id.* The court concluded that the Talking Telegram service in its entirety went "beyond mere information gathering or message delivery." *Id.* at 1149.

Safeguard's actions here bear little resemblance to those of Western Union in *Romine*. The gimmick of the "Talking Telegram" was aimed specifically at debt collection and was confrontational, indeed sensational. By contrast, Safeguard is so far removed from Green Tree's actual debt-collection process that it cannot be said to have engaged in debt collection, even indirectly, under § 1692a(6). The principal purpose of the contact inspection is to assist Green Tree in its FHA property preservation efforts, not its debt-collection efforts. We recognize that Safeguard transmits valuable infor-

mation—occupancy status—back to Green Tree. However, although knowledge of the property's occupancy status might assist Green Tree in its own debt-collection efforts, Green Tree is *required* by HUD regulations to verify occupancy. It is not unreasonable for Green Tree to comply with that obligation by contracting with Safeguard to perform a nonintrusive visual inspection of the mortgaged properties. Whether to commence collection efforts and the nature of those collection efforts remained exclusively in the hands of Green Tree.

Likewise, the Third Circuit's decision in *Siwulec v. J.M. Adjustment Services, LLC*, 465 F. App'x 200 (3d Cir. 2012) (unpublished), provides a helpful contrast. The Schlafs' reliance on *Siwulec* therefore is not persuasive. *Siwulec* involved a third-party agency that visited homeowners with past-due mortgage payments to deliver letters from their lenders seeking "information" from the homeowners to help the lenders resolve "past due" payments. *Id.* at 201. The third party also instructed its representatives "to urge alleged debtors, in person, to call the creditor while they watched" and "to gather contact information from the debtors directly, to speak with their neighbors, and to conduct a visual assessment of their properties." *Id.* at 204. The Third Circuit concluded that under the facts as pleaded by the plaintiff, the agency's involvement "br[ought the agency] out of any messenger exception and into the coverage of the FDCPA" and that the plaintiffs had plausibly pleaded that the agency was a debt collector. *Id.* Unlike the agency in *Siwulec*, Safeguard does not deliver any communications that contain information about the debt or past due payments, does not collect homeowners' contact information, and does not "urge

alleged debtors, in person, to call the creditor while they watched." *Id.*

We readily acknowledge that the extant case law is not dispositive of our decision, which rests, as it should, on our analysis of the plain wording of the statute. To be sure, what constitutes "indirect" debt collection will have to be determined on a case-by-case basis until the case law produces a more robust understanding of that concept. Congress certainly must have foreseen that such a term would require such fact-specific adjudication. Our holding today is limited to the situation before us, a situation that implicates none of the concerns articulated by Congress in enacting the statute.

## Conclusion

For the reasons stated above, the district court did not err in concluding that Safeguard is not an indirect debt collector. We therefore affirm the judgment of the district court.

AFFIRMED